86 So.2d 645 (1956)
STATE of Florida ex rel. R.L. WATSON, Petitioner,
v.
D.O. ROGERS, as Circuit Judge, Tenth Judicial Circuit in and for Polk County, Florida; The Circuit Court, Tenth Judicial Circuit in and for Polk County, Florida, Respondents.
Supreme Court of Florida. En Banc.
March 16, 1956.
Rehearing Denied April 26, 1956.
*646 William P. Tomasello, Bartow, for petitioner.
Oxford & Oxford and Chas. F. Chastain, Lakeland, for respondents.
TERRELL, Justice.
August 31, 1954, Clem Harris Watson was granted a divorce from Judy Watson in Polk County. The custody of their three minor children, Judith Clemine Watson, Lorena June Watson and Clem Harris Watson, Jr., was awarded to Judy Watson. April 8, 1955, pursuant to petitions filed in the Juvenile Court of Hillsborough County, said court entered an order taking custody of Clem Harris (Sonny) Watson, Jr., as a dependent child. On the following date, April 9, 1955, under like representations, the said Juvenile Court entered an order taking custody and control of Judith Clemine Watson and Lorena June Watson as dependent children and placed all three minors in custody and control of R.L. Watson, their grandfather.
April 18, 1955, Clem Harris Watson filed a second suit in the Circuit Court of Polk County in which he sought to modify the final decree of divorce entered August 31, 1954, in so far as it affected the custody of the minor children. The court entered an order on the same date restraining Judy Watson from removing the children and ordering them to be held in the custody of R.L. Watson. April 21, 1955, after a hearing on the petitions of April 8 and 9, the Juvenile Court of Hillsborough County adjudicated said minors to be dependent children in contemplation of law and placed them in the home of their father, Clem Harris Watson, under the supervision of a counselor of the court. Despite the latter order of April 21, 1955, the Circuit Court of Polk County entered an order authorizing defendant, Judy Watson, to visit said minor children three mornings each week from 9:00 A.M. to 10:30 A.M. and to have said children visit her on Tuesday of each week from 9:00 A.M. to 7:30 P.M.
June 6, 1955, on petition of Judy Watson, the Circuit Court of Polk County entered an order without notice or hearing directing the relator, R.L. Watson, to *647 deliver the minor children to Judy Watson instanter and upon failure to do so, to appear before said court at 2:00 P.M., Thursday, June 9, 1955, at Lakeland, Florida, and show cause why he refused to do so. Said hearing was not conducted account of the inability of the judge to attend. June 14, 1955, relator, R.L. Watson, moved to stay further proceedings in the Circuit Court on the ground that the Juvenile Court of Hillsborough County had original and exclusive jurisdiction of said minor children by virtue of their having been declared dependent and prayed the court to take no further action in regard to their custody until the Juvenile Court of Hillsborough County transferred or relinquished its jurisdiction. In response to this petition the Circuit Court entered an order holding that it had jurisdiction of said minor children by virtue of the proceeding filed April 18, 1955, by Clem Harris Watson, denied the motion to stay and directed R.L. Watson to place custody of said children in their mother, Judy Watson, Thursday of each week.
Account of the latter order, suggestion for writ of prohibition was filed in this court by R.L. Watson, a rule nisi was issued so the cause comes on for final disposition on motion of respondent to quash the rule nisi and dismiss the suggestion for the writ of prohibition.
The point for determination is whether or not after minor children of divorced parents have been declared to be dependent by the Juvenile Court pursuant to F.S. Chapter 39, F.S.A., may the Circuit Court in proceedings supplementary to divorce exercise jurisdiction over said minor children and enter orders relating to their care, custody and control.
The answer to this question turns on the interpretation of Sections 11 and 50, Article V of the Constitution, F.S.A., and F.S. § 39.02(1), F.S.A., the pertinent parts of which are as follows:
"39.02(1). The juvenile court shall have exclusive original jurisdiction of dependent and delinquent children domiciled, living or found within the county or district in which the court is established. * * *"
Section 11, Article V of the Constitution:
"The Circuit Courts shall have exclusive original jurisdiction in all cases in equity, also in all cases at law, not cognizable by inferior courts, * * * to the estates and interests of minors, * * *."
Section 50, Article V of the Constitution:
"The Legislature shall have power to create and establish Juvenile Courts in such County or Counties or Districts within the State as it may deem proper, and to define the jurisdiction and powers of such courts and the officers thereof, and to vest in such courts exclusive original jurisdiction of all or any criminal cases where minors under any age specified by the Legislature from time to time are accused, including the right to define any or all offenses committed by any such persons as acts of delinquency instead of crimes; * * * without being limited therein by the provisions of this Constitution as to trial by jury in Sections 3 and 11 of the Declaration of Rights, as to use of the terms `prosecuting attorney' and `information' in Section 10 of the Declaration of Rights, as to election or apportionment of officers in Section 27 of Article 3, as to jurisdiction of criminal cases in Sections 11, 17, 22 and 25 of Article 5, as to original jurisdiction of the interests of minors in Section 11 of Article 5, and as to style of process and prosecuting in the name of the State in Section 37 of Article 5, or other existing conflicting provisions of this Constitution."
An examination of the quoted part of F.S. § 39.02(1), F.S.A., shows that the legislature gave juvenile courts "exclusive original jurisdiction of dependent and delinquent children domiciled, living or found within the county or district in which the court is located." In construing this act, however, we are not to overlook the fact that whether the act says so or not, it is *648 limited by Sections 11 and 50, Article V of the Constitution, the pertinent parts of which are quoted above. It is further limited by the purpose for which juvenile courts are created.
Section 11, Article V of the Constitution as related to this case limits the jurisdiction of circuit courts to "all cases in equity * * * the estates and interests of minors." Section 50 of Article V authorizes the creation of juvenile courts and to vest them with "exclusive original jurisdiction of all or any criminal cases where minors under any age specified by the Legislature from time to time are accused, including the right to define any or all offenses committed by any such persons as acts of delinquency instead of crimes." After all is said, the jurisdiction of the Circuit Court over minors as provided by Section 11, Article V, goes to bread and butter and the spiritual, while the jurisdiction of the Juvenile Court over them as conferred by Section 50, Article V, goes to criminality, delinquency, dependency or other form of parental neglect.
It will be observed from reading Section 50, Article V, in full that it carries the foregoing authorization without being limited by Sections 3 and 11, Declaration of Rights, relating to jury trial; Section 10, Declaration of Rights, Section 27, Article III as to jurisdiction in criminal cases; Sections 11, 17, 22 and 25, Article V, as to original jurisdiction of the interest of minors and as to Section 37, Article V, relating to style and conflicting provisions of the Constitution. In other words, when read as a whole, Section 50, Article V, is directed to jurisdiction of criminal cases or some phase of child delinquency and does not involve child custody in a divorce case where "estates and interests of minors" are involved.
Since Section 50, Article V of the Constitution applies only to "criminal cases" where "minors under any age specified by the Legislature" are involved, the legislature would have the power to classify them (minors) as dependent or delinquent. F.S. § 39.01(10), F.S.A., defines dependent child as one "who, for any reason, is destitute, homeless, dependent upon the public for support, or has not proper parental support, maintenance, care * * * or who is neglected." The same act defines a delinquent child as one who commits a violation of law regardless of where the violation occurred, is incorrigible, is a persistent truant from school, who is beyond the parents' control, is a reputed criminal or associates with criminals, etc.
It follows that when the provisions of Section 50, Article V of the Constitution are read with other provisions of the Constitution referred to therein including Sections 39.01(10, 11) and F.S. § 39.02(1), F.S.A., the jurisdiction of juvenile courts goes only to matters that are essentially delinquent or criminal unless the question of dependency enters the picture. In a proceeding for divorce, being a suit in "equity," the circuit court has jurisdiction under Section 11, Article V of the Constitution, including the "estates and interests of minors." The custody or guardianship of a minor child would naturally come under the head of "interests of minors", and it would be an incident to the divorce suit and should be adjudicated in connection with the divorce suit. Estates and "interests of minors" are an entirely different incident from their delinquency or criminality and there is not the slightest indication in the statute or the Constitution that there was a purpose to remove the power to adjudicate "estates and interests of minors" from the circuit courts.
In the case at bar it is contended that the children in question are not delinquent or dependent as contemplated by Section 39.01(10) and (11) because the Juvenile Court found: "After the divorce and the father's (Clem Harris Watson) remarriage, his manner of life appears to have entirely changed. He has established a home with his new wife that offers security and wholesome environment to the children. There was no evidence that it was in any way an improper place for the children." Certainly there is nothing in such *649 a finding to indicate that the children were "dependent" as contemplated by the statute quoted herein defining such terms.
The finding of the Juvenile Court was limited to "dependency" but there was also a finding that in the divorce decree the father was required to pay the mother $200 per month support for the children and that it has been regularly paid. The Juvenile Court and the Circuit Court both found that R.L. Watson was a suitable guardian for the children. The finding of dependency appears to have been based on the fact that the mother was an alcoholic.
It further appears from the decree dated August 31, 1954, granting Clem Harris Watson a divorce from Judy Watson that the Circuit Court also adjudicated the custody of the minor children. He had jurisdiction to do this and not only that, he had jurisdiction to reconsider that degree and make such other order as to their custody as circumstances and the "interests" of the minors dictated. He pursued such a policy in his decree of April 18, 1955, wherein he required that they continue in the custody of R.L. Watson, their grandfather.
From what has been said we are impelled to hold that the Circuit Court has jurisdiction of the estates and interests of minor children when brought into a divorce suit, that the Circuit Court could adjudicate their "estates and interests" at any time the circumstances warrant or the condition of the minor children required. Such "estates and interests", particularly their "estates," the juvenile court had no jurisdiction to adjudicate and the Constitution is silent as to any intent to clothe them with such jurisdiction.
In this holding we do not overlook the fact that in some states the juvenile court may acquire jurisdiction over the children of divorced parents who later become "dependent" or "delinquent" within the meaning of the law, but our statutory and constitutional provisions regulating the status of such children in a case like this does not so provide. When the Circuit Court finds itself confronted with a case within the jurisdiction of the juvenile court, the practice has been to certify it to that court for disposition. Orderly procedure would require this in any case where the Circuit Court finds that a minor child or children have become delinquent or otherwise in the criminal class as contemplated by F.S. § 39.01, F.S.A.
It is accordingly our view that the Circuit Court did nothing more than exercise his discretion in a matter properly brought before him, that he had jurisdiction of the parties and the subject matter and being so, the rule nisi is quashed and the writ of prohibition is dismissed.
It is so ordered.
DREW, C.J., and THOMAS, HOBSON, ROBERTS and THORNAL, JJ., concur.
SEBRING, J., dissents.