SHANNON, Judge.
The appellants, plaintiffs below, filed their amended bill against the defendants praying for an injunction enjoining and restraining them from operating a boarding school, nursery, boarding home, or similar child-caring institution for the care of children and, also, requiring the defendants to deliver the custody of the minor children to The State Department of Public Welfare for public placement in the homes of suitable persons or relatives, in good foster homes or in approved institutions. To the amended complaint the defendants filed a motion to dismiss alleging that the amended complaint failed to state a cause of action and that the court below was without jurisdiction as to the parties or the subject matter. At the conclusion of argument the Chancellor dismissed the amended complaint with prejudice. No reason is assigned in the final decree of the Chancellor.
The plaintiffs appealed and assigned as error two questions, the first of which is whether The Department of Public Welfare in the State of Florida has the authority to require a person or corporation who has dependent children in his or its care in a child-caring institution to obtain a license from the said department to operate such institution, and secondly, when The Department of Public Welfare alleges that certain children in a child-caring institution are under improper guardianship, has the Circuit Court of the circuit wherein the institution is located jurisdiction for the purpose of hearing and determining such questions.
It appears from the amended complaint that one of the defendants, John Vogel, who has been operating a child-caring institution in Kentucky known as The Galilean Children’s Home, brought approximately thirty-five minor children to Lake County, Florida, for the purpose of reestablishing the said Home there. He made application to the plaintiffs for a license to operate a child-caring institution in the State of Florida, which was denied. At Vogel’s request a hearing on said application was granted by the plaintiffs as a result of which he was denied a license, and the resolution of the plaintiffs at that time directed certain of the defendants to cease operation on or before April 1, 1957. Notwithstanding their refusal to grant a license, John Vogel, who was alleged to have been the alter ego of The Galilean Children’s Home, a Kentucky corporation, as well as the Galilean Academy of Florida, a corporation which was organized in Florida on or about May 31, 1957, proceeded without the consent or a license of The State Department of Public Welfare. In its amended bill the plaintiffs alleged that John Vogel, notwithstanding the corporate organizations of the two defendants had full and unlimited power an absolute control of all the affairs and activities of both defendant corporations. The amended complaint also alleged that the defendants were unlawfully and improperly operating or attempting to operate the child-caring institution for a number of dependent children; that the said children are dependent children in that they are not residing with *390 their parents, legally appointed guardian, or relatives; they are not in the custody of a person who is considering .or who has applied for their adoption in the manner provided for by law, and that they are completely dependent upon charitable contributions for their maintenance, support and education and as such, the defendants or neither of them has procured a license from the plaintiffs to operate a boarding home, nursery or similar child-caring institution in the State of Florida. The amended complaint also alleged that the defendant, Vogel, is an improper person and then relates the various offenses of which the said Vogel has been accused, particularizing some several thereof, such as that he was forced to voluntarily surrender the license for The Galilean Children’s Home in the State of Kentucky and remove himself to another state; then he brought with him to the State of Florida approximately thirty-five minor children in ages ranging from approximately two years of age to seventeen years of age; that the said Vogel had, as an example, criminally assaulted and carnally knew one of the said girls of approximately 15 years of age; that on his numerous trips he took a number of the minors along formed into what is known as a “choral group”, that Vogel insisted that at least two or three of the girls occupy the same bedroom with him and that if any of the girls protested, he, Vogel, would fly into violent and ungovernable fits and rages of temper; that he had sexual relations with one of the girls who was approximately fourteen years of age; that his wife had left him because of his immoral conduct; that there were two separate indictments for rape returned by the Grand Jury in the State of Kentucky against Vogel. The amended bill of complaint also has in it all the details connected with the charge of being an improper person to maintain the child-caring institution and alleges he should not be permitted to operate the same in Florida.
We will take up first the questions as to whether or not the Department of Public Welfare of the State of Florida has the authority to require a person or corporation who has dependent children in his or its care in a child-caring institution to obtain a license from the Department of Public Welfare. For this authority, Section 409.05, Fla.Stat.1957, F.S.A. provides:
“The state board may, by rules and regulations, set minimum standards for the care of dependent children away from their own homes and shall prescribe, amend or alter such rules and regulations as may be necessary for the care and supervision of such children. No person other than a relative or a person who is considering the adoption of a child in the manner provided for by law, and no institution, society, or association may receive a dependent child for boarding or custody, unless such a person, society, association or institution shall have first procured a license from the department empowering or authorizing such person, association, institution, or society to care for, receive or board a child or children. Application for license shall be made on blanks provided by the department. The application must also be approved by the state board of health after inspection of health and sanitary conditions. A copy of the license so issued, which shall be provided by the department without charge, shall be on the approved form established by the state board and shall be kept readily available by the licensee. Such license shall be valid for not more than one year after the date of issue but may be renewed or extended as provided for by the rules of the state board. Any such license may be revoked by order of the board for violation of the regulations of the state board governing the activities of the licensee. If such order is not complied with, within a reasonable time, then after a reasonable notice, the state board shall apply to a court of equity having jurisdiction over the institution, and such court *391 of equity shall hear and determine the case, and shall grant such relief, mandatory or injunctive, as the case may require. If such order of revocation is not complied with, within a reasonable time, or if any person, society, association or institution shall receive a dependent child for boarding or custody without having first procured a license from the department, or without the approval of the state board of health, as herein provided, then, after a reasonable notice, the state board shall apply to a court of equity having jurisdiction over the person, society, association or institution, and such court of equity shall hear and determine the case and shall grant such relief, mandatory or injunctive, as the case may require.”
The Board, by resolution on February 22, 1957, after a hearing was extended to the defendant, took the following action:
“Now Therefore, Be It Resolved, that the State Welfare Board at its regular meeting on February 22, 1957, hereby
“1. Reaffirms its action of November 17, 1956, in denying the application of the Galilean Children’s Home for a license to operate a child caring institution in Florida and
“2. Authorizes a period of five weeks or until April 1, 1957, to give the Galilean Children’s Home an opportunity to plan for the children, which may include returning children to parents and relatives, referring children to appropriate agencies for adoption and foster home placement and referring children to approved institutions.
“3. That in the event said institution continues operating as a child caring institution in Florida subsequent to April 1,1957, the attorney for the State Welfare Board and the Department of Public Welfare is hereby authorized and directed to initiate appropriate legal proceedings in conformance with the foregoing.”
In its amended bill of complaint the entire resolution was made a part, together with the plaintiffs’ licensing rules and regulations. Included in the license regulations, which was also made a part of the amended bill of complaint, it is provided among other things:
“1. A child caring institution which is subect to licensing as defined by law must not accept children for care until a license is secured from the State Department of Public Welfare.”
In the chapter treating of juvenile courts, Section 39.01(10), Fla.Stat.1955, F.S.A. cites a dependent child as:
“A child who, for any reason, is destitute, homeless, dependent upon the public for support, or has not proper parental support, maintenance, care, or guardianship; or who is neglected as to proper or necessary support or education as required by law, or as to medical, psychiatric, psychological or other care necessary for the well-being of the child; or who is abandoned by the child’s parents or other custodian; or whose condition or environment are such as to injure or endanger the welfare of the child or the welfare of others; or whose home, by reason of neglect, cruelty or depravity, or other adverse condition, on the part of the parents, legal custodians, guardian or other person in whose care the child may be, is an unfit place for the child.”
The defendants in their brief and by their argument take the position that the plaintiffs have no statutory powers regarding minors unless such minors are “dependent” in the sense that they must have aid from public funds and, also, they point out that the “academy” is an educational institution and therefore, not under the licensing authority of the plaintiffs.
Without complicating the fundamental issue in this case the amended bill of com *392 plaint charges that the minors are “dependent children”, within Section 409.05, Fla. Stat.1955, F.S.A., and that the defendants applied for a license which was refused by the plaintiffs and the defendants proceeded to operate their so-called “school”. The defendants take the position that the Department of Public Welfare has no legal concern about the minors which are under the complete control of the defendants as long as the defendants used the words “academy” or “school” or something similar in their name, notwithstanding the charges made by the plaintiffs in their amended complaint.
It would indeed be a sad commentary upon the State of Florida if we should hold that a person or a corporation could gather together defenseless minors and by adroit wording call an institution by any name that purports to be a facsimile for the institutions of learning in this state. The amended bill of complaint alleges that Vo-gel has gathered together such “dependent children”, named one of the corporations, which he has absolute control of the “Galilean Academy of Florida”; that he-has applied for and has been refused a license by the State Department of Public Welfare, and that he is an improper person to either indulge in, or be adroitly naming an institution an “academy” until or unless he has secured a license. The law is very explicit in giving the authority to the Department of Public Welfare to make investigations and, when made, to act upon them. The Board has acted upon the question and the defendants, after having applied for and having been refused such license proceed to do the very thing which the law says they should not do, absent a license. If the allegations in the amended complaint are proven, then the injunctive relief which the plaintiffs pray should be granted and if, on the other hand, they do not sustain the allegations, then the defendants should be dismissed. Under court rules a motion to dismiss admits all the material allegations of the complaint are true and consequently, we hold that the amended bill of complaint is not subject to the motion to dismiss on the first ground.
The second question revolves around the jurisdiction of the circuit court, in that the defendants have contended that the juvenile court has exclusive jurisdiction over “dependent children”. It is their contention that Section 39.02(1), Fla.Stat. 1955, F.S.A., precludes the jurisdiction of the circuit court, because of the following language:
“The juvenile court shall have exclusive original jurisdiction of dependent and delinquent children domiciled, living or found within the county or district which the court is established. * * * »
This contention of the defendants would have been effectively answered in the negative by State ex rel. Watson v. Rogers, Fla.1956, 86 So.2d 645, if it were not for the constitutional amendment of Article V, Section 6(3), F.S.A., effective July 1, 1957. The Rogers case held that Fla.Stats., § 39.02, F.S.A., in granting “exclusive jurisdiction” to juvenile courts, was limited by the constitutional provisions regarding the jurisdiction of the circuit courts, and the constitutional basis for § 39.02.
Prior to the 1957 constitutional amendment the circuit courts- had “exclusive original jurisdiction in all cases in equity”, Article V, Section 11, and Article V, Section 50, provided that:
“The Legislature shall have power to create and establish Juvenile Courts in such County or Counties or Districts within the State as it may deem proper, and to define the jurisdiction and powers of such courts and the officers thereof, and to vest in such courts exclusive original jurisdiction of all or any criminal cases where minors under any age specified by the Legislature from time to time are accused, including the right to define any or all offenses committed by any such *393 persons as acts of delinquency instead of crimes; * * * ”
Construing Fla.Stat., § 39.02, F.S.A. in the light of these two constitutional provisions, the Rogers case, supra, held that the jurisdiction of the juvenile courts went to “criminality, delinquency, dependency or other form of parental neglect,” while the circuit courts still had jurisdiction over minors where it went to “bread and butter and the spiritual”, and thereby sharply restricted the meaning of “exclusive jurisdiction” as used in Section 39.02. However, as pointed out in an article by Roger J. Waybright, Florida’s Juvenile Court Law (Revised January 1, 1958, F.S.A. § 39.01 et seq.) which may be found in the 1957 cumulative pocket supplement to Fla.Stat. Annotated, Volume 1, the 1957 constitutional amendment changed the pertinent provision regarding circuit court jurisdiction to read: “exclusive original jurisdiction in all cases in equity except such equity jurisdiction as may be conferred on juvenile courts.” This amendment would in part nullify the Rogers case, as pointed out in footnote 5 of the aforementioned article by Mr. Waybright, however, it is noted that the former Article V, Section 50, remains unchanged as Article V, Section 12, also that the Rogers case limited the “exclusive jurisdiction” of Section 39.02 not only on the basis of the constitutional provisions, but added: “It is further limited by the purpose for which juvenile courts are created.” The purpose of juvenile courts remains unchanged under the new Article V, Section 12 of the Florida Constitution, and still would seem to go to those minors involved in criminality or delinquency.
This problem of the jurisdiction of juvenile courts is by no means exclusively Florida’s, in 31 Am.Jur., Juvenile Courts and Offenders, Section 28, we read:
“In almost every state the juvenile court is faced with problems concerning its relation to other courts in the judicial system, both criminal and civil. The statutes of several jurisdictions relating to juvenile courts do not take away the jurisdiction of the ordinary criminal court to try juvenile offenders for crime where the welfare of the public requires it, and will not necessarily be held to repeal by implication prior statutes conferring jurisdiction on another court to provide for the custody and control of children not properly cared for.” (Emphasis added.)
This is not in conflict with the general rule of legislative construction which presumes later statutes passed with the knowledge of prior existing laws, and favors a construction which gives each a field of operation rather than have one meaningless or repealed by implication. 50-Am.Jur., Statutes, Sections 354 and 362.
In the instant case Chapter 409 of the Florida Statutes, F.S.A. was in existence when the constitutional amendment regarding juvenile courts, and the enacting legislation, Chapter 39 were effected, and all sections are presumptively still operating in conjunction with later legislation, not impliedly repealed by it, and we will, with the principles heretofore set out, hold that the two statutes should be so construed as to render each operational, and Section 39.02 is held to be still limited by the Rogers case, supra, ■ to the “purpose for which juvenile courts are created”, and it would' seem that the enforcement of the Department’s authority, where no statutory enforcement exists, would fall within the equity jurisdiction of the circuit court.
Another ground which would sustain the lower court’s jurisdiction is that the relief prayed for is to have the defendants enjoined “from operating a child-caring institution in violation of the provisions of Chapter 409.05, Fla.Stat.1955 [F.S.A.]” and that the relief sought could not be obtained in juvenile court and therefore, the question of jurisdiction over “dependent” children, would only arise as a collateral issue in this case.
*394 The circuit court having jurisdiction on the question of whether the defendants were operating the child-caring institution without a license, the court would, under equitable principles, have jurisdiction to grant adequate and complete relief.
In view of what we have said, we hold that the circuit court has jurisdiction of the subject matter, and this cause will proceed in line with the views expressed herein.
Reversed.
KANNER, C. J., and ALLEN, J., concur.