SMITH, Judge.
Jack L. Turner appeals from an order of the juvenile court entered in the styled cause holding him in contempt for wilful failure to comply with a child support order.
A petition was filed in the juvenile court making allegations of dependency concerning appellant’s three minor children. The petition disclosed that a circuit court in another county had previously entered a $35 weekly child support order in a prior divorce proceedings. The juvenile court adjudged the children dependent and entered an order directing appellant to pay to the court $35 weekly child support for disbursement to their mother, the former wife, and to keep the court advised of any changes in his address. About ten weeks later appellant ceased making payments, and moved to Nevada to avoid arrest and get a job. Appellant spent the next two years in Nevada, Arizona and Florida, alternately, working, seeking employment and seeking treatment or financial assistance for an ailment subsequently diagnosed as emphysema. He never notified the court of any change of address. He was arrested on a bench warrant issued by the court based upon the court’s records of failure of payment and failure to notify of the change of address. At a hearing before the court Turner appeared with counsel and first moved to dismiss upon the grounds that the circuit court having jurisdiction of the children in a divorce case had not transferred jurisdiction to the juvenile court for enforcement proceedings and therefore exclusive jurisdiction of the matter rested in the circuit court.
In State ex rel. Hendricks v. Hunt, Fla.1954, 70 So.2d 301, the Supreme Court held that a circuit court order in a pending divorce suit, placing children in the custody of their mother, did not prevent a juvenile court from assuming jurisdiction, adjudicating the children dependent and placing them in the custody of third persons as wards of the state. In a subsequent case, State ex rel. Watson v. Rogers, Fla.1956, 86 So.2d 645, the Supreme Court held that an outstanding juvenile court order issued under similar circumstances, transferring custody from the mother to the father or grandfather, did not preclude the circuit court from issuing an order in supplementary proceedings authorizing the mother to have custody of the children one day each week. The Rogers opinion did not expressly overrule the Hunt decision or otherwise clearly indicate that an existing circuit court jurisdiction with respect to child custody and support is exclusive.[1] We are *377 of the view that the true import and real meaning of Hunt and Rogers cannot be obtained by dwelling upon isolated portions of either but when read as a whole in pari materia we conclude their meaning to be that a child, for whom custody and support provisions have been made in the circuit court in a divorce proceeding (referred to in Rogers as jurisdiction of the circuit court going to “bread and butter and the spiritual”) may thereafter be adjudged a dependent or delinquent child in a juvenile court. This jurisdiction of the juvenile court as stated in Rogers “goes to criminality, delinquency, dependency or other form of parental neglect.” Custody and support of a child of parties in a divorce proceeding is adjudicated without any determination of a “dependent child” or a “delinquent child” as the words are defined in Ch. 39, Fla.Stats., F.S.A., establishing the jurisdiction of juvenile courts, whereas the juvenile courts derive their jurisdiction solely on the basis of an adjudication that the child is “dependent or delinquent.” For this reason the causes of action are different and the jurisdiction is different. The juvenile court had jurisdiction to make an adjudication of dependency of the children of these divorced parents. The jurisdiction of the two courts may become overlapping in some aspects of the matter[2] but we view any question of overlapping as raising only the ground of pendency of another action for the abatement of the subsequent overlapping part. Here the subsequent juvenile court dependency and support adjudication was not challenged by appeal and the assault is solely on the ground of lack of jurisdiction. Disobedience of an order issued without jurisdiction is not contempt. State ex rel. Everette v. Petteway, 1938, 131 Fla. 516, 179 So. 666. But a showing that an order disobeyed was merely erroneous is no defense. Seaboard Air Line Ry. Co. v. Tampa Southern Ry. Co., 1931, 101 Fla. 468, 134 So. 529.
Appellant’s contention that the juvenile court is exercising equity powers in excess of its jurisdiction by attempting to adopt and enforce the circuit court support order cannot be sustained.[3] The jurisdiction of the juvenile court, created under the general law, did not depend upon or exist by reason of the circuit court support order. It arose and existed solely by reason of the dependent status of the children.[4] The order of the juvenile court determining dependency and directing Turner *378 to make the support payments was not void for lack of jurisdiction.
Turner next contends that he was denied due process of law in the contempt proceedings. In order to determine that question we must further determine whether the proceedings were criminal contempt proceedings or civil contempt proceedings and either direct or indirect because the rules of due process of law are different.
A contempt proceeding is direct where the act constituting the contempt is committed in the immediate presence of the court. Direct contempt proceedings are summary and may be without pleading, formal charge or affidavit. Where an act is committed out of the presence of the court the proceeding to punish is for indirect (constructive) contempt. Such proceedings must ordinarily be instituted by accusation, pleading or affidavit setting forth the facts constituting the contempt. Formal pleading may become unnecessary if the person charged is given notice of the charge and a hearing. A court may on its own motion institute an indirect contempt proceeding. In an indirect contempt proceeding the accused is always entitled to a hearing and an opportunity to resist the charge through defense or explanation.[5]
In determining whether contempt proceedings are civil or criminal, this characteristic is determined by the nature of the contempt involved without regard to the cause in which the contempt arose. Ordinarily the real character of the proceedings is to be determined by the dominant purpose or the relief sought. The character and purpose of the penalty usually distinguishes civil contempt from criminal contempt. Usually the proceedings are to be regarded as criminal when the purpose is primarily punishment and civil when the purpose is primarily compensatory or remedial.[6]
Strictly speaking, criminal contempt proceedings are not criminal proceedings or prosecutions even though the act involved is also a crime.[7] In criminal contempt proceedings the dominant purpose is punitive in nature. Its purpose is to preserve the power and vindicate the authority and dignity of the court and to punish for disobedience of its orders. The government, the courts and the people are interested in its prosecution and the state is the real prosecutor. In general, save in respect of indictment and trial by jury, criminal contempt proceedings should be in accordance with the principles and rules applicable to criminal cases insofar as such procedure is consistent with the summary nature of contempt proceedings. The accused is to be afforded many of the protections provided in regular criminal cases including the presumption of innocence which continues until there is proof beyond a reasonable doubt. In criminal contempt proceedings the sentence is solely punishment. It may be fine, imprisonment, or both, and the terms and amounts must be definitely stated. No provision for purging is required.[8]
The purpose of civil contempt proceedings is to preserve and enforce rights of private parties to suits and to compel obedience to orders and decrees made for benefit of such parties. These proceed *379 ings are generally remedial and civil in ■their nature. They are essentially a remedy for coercing a person to do the thing required where the disobeyed order may •still be obeyed. In civil contempt proceedings the penalty is coercive rather than punitive. A punitive sentence may not be .imposed and imprisonment to compel com-jpliance is not available if the accused is un:able to comply. Civil contempt proceedings ■should be instituted by the aggrieved party ■or those who succeed to their rights or someone who has an interest in the right to be protected. Due process of law requires that the party accused be advised of the charge and accorded opportunity to defend himself. In these proceedings there is no presumption of innocence and the bur•den of proof is upon the party bringing the -charge to prove the facts charged by a preponderance of the evidence. Where a court order and its violation are established or admitted the burden is on the accused to show facts which would excuse his default. If the defense or excuse is that of inability to comply, the accused has the burden of proving by a preponderance of the evidence such inability. This is based upon the fact that the making of the order involved an implicit finding of ability to comply. Thus there must be an affirmative finding appearing on the commitment order that it is within the power of the accused to obey the order and, conversely, imprisonment is not available if the accused is unable to •comply. It is for this reason often stated that the accused carries the keys of his •prison in his pocket. In Florida it has been held that imprisonment for civil contempt must be for a fixed term and must include a specifically stated provision for purging. The fixed term requirement was imposed without stating whether the contempt was civil or criminal. As a general rule a fixed term is not required in punishment for civil contempt.[9]
Reverting now to the facts of the case at bar with particular reference to Turner’s contention that he was denied due process of law and in order to determine whether the proceedings were for contempt direct or indirect, civil or criminal, we note again the fact that the proceedings were instituted by the court on the issuance of the bench warrant After arrest Turner ob • tained his release on bond and appeared before the court with his attorney pursuant to notice. On being overruled on the jurisdictional motion Turner actively participated with his counsel. The court took judicial knowledge of its own records in the cause.[10] Turner then testified, admitting his failure to comply and dwelt at length concerning his good faith and financial inability. He did not have any financial records and mentioned employment in Nevada, Arizona and Florida but was indefinite as to many details. The court then spoke to some of Turner’s former employers by loud speaker telephone in an effort to verify Turner’s testimony or obtain more specific or accurate information. Some such unsworn hearsay statements so received and recorded by the court reporter substantiated Turner and some contradicted him. Turner testified in more precise detail with respect to his present financial condition by showing without contradiction a total present lack of funds, unemployment and a present physical condition (emphysema), supported by physician’s certificate, which renders him incapable of following his only prior trade of plumber or any other employment involving physical exertion.
*380 Applying the law of contempt to the facts of this case it appears that the alleged contempt was indirect and that the proceedings were not conducted in accordance with the requirements of due process of law applicable to criminal contempts. We need not determine whether due process requirements applicable to civil contempts were met because Turner sustained his burden of proving by clear and convincing evidence present inability to make any payments of any kind. His sentence was one year in the county jail with provision for purging by paying the total arrearage adjudicated. A sentence of imprisonment is not available in a civil contempt proceeding where the accused meets his burden of proving his inability to comply, so even if the proceeding could be sustained as for civil contempt, nevertheless, the finding of ability to comply and the sentence were erroneous.
The order appealed is reversed.
SHANNON, Acting C. J., concurs.
McNATT, JOHN M., Associate Judge, concurs specially.

. Some language in the opinion indicates that the case turned on the absence of any valid ground or basis for a juvenile court dependency order. Other language implies that the circuit court’s jurisdiction may be exclusive. Although Article .V of the Constitution of Florida, F.S.A. has been revised since the decisions in Hunt and Rogers, supra, the present provisions on the subject are identical to those existing at the time of the Hunt and Rogers decisions. Although amended in other respect not material here, the statute delineating the jurisdiction of the juvenile court, § 39.02(1) Fla.Stats., F.S.A., remains the same and there has been no change in the statute defining a dependent child. Sec. 39.01(10), Fla. Stat., F.S.A. So for our purposes here the law is the same as it existed at the time of the decisions in Hunt and Rogers.

. Cf. Conrad v. Rose, Fla.App.1965, 173 So.2d 762 (juvenile court lias jurisdiction to determine whether child was dependent to extent of not receiving proper legal support under out-of-state custody-support order). See also Ponce v. Children’s Home Society of Florida, Fla. 1957, 97 So.2d 194, 197: “While there is no doubt of the jurisdiction of circuit court over adoption, great caution should be observed by a circuit judge in the • exercise of that jurisdiction to see that there is no conflict between his court and that of the juvenile court with respect to dependent children. As a general rule where a juvenile court has assumed jurisdiction over a dependent child * * * a circuit court judge, although he may have the power to do so, should not entertain a petition for adoption of such child until the juvenile court has made a permanent commitment of the child to a licensed placement agency * * * or otherwise relinquished jurisdiction.”

. Art. Y, Sec. 6(3) of the Florida Constitution vests circuit courts among other things, with “exclusive original jurisdiction in all cases in equity except such equity jurisdiction as may be conferred on juvenile courts.” Juvenile courts formed under general law, as distinguished from those formed under special acts, are expressly vested only with “exclusive original jurisdiction of dependent and . delinquent children * * * ” Section 39.02, Fla.Stats., F.S.A. Child support orders “entered by any court of this state,” may be enforced “by another equity court in this state” by filing “in the equity court” for the county where the petitioner or respondent resides a certified copy of the support order and petition for enforcement. Section 65.18, Fla. Stats., F.S.A.

. Cf. Conrad v. Rose, supra.

. Ex parte Biggars, 1923, 85 Fla. 322, 95 So. 763; State ex rel. Laramie v. Boggs, Fla.App.1963, 151 So.2d 456; 17 C.J.S. Contempt §§ 63 and 71, and Annot., Necessity of Affidavit or Sworn Statement as Foundation for Constructive Contempt, 41 A.L.R.2d 1263.

. Seaboard Air Line Ry. Co. v. Tampa Southern R. Co., supra; 17 C.J.S. Contempt, § 62(4).

. Demetree v. State, Fla.1956, 89 So.2d 498, was a criminal contempt proceeding for conduct which also constituted a crime.

. Demetree v. State, supra; Ballengee v. State, Fla.App.1962, 144 So.2d 68; 17 C.J.S. Contempt § 62(5).

. Seaboard Air Line Ry. Co. v. Tampa Southern R. Co., supra; State ex rel. Trezevant v. McLeod, 1936, 126 Fla. 229, 170 So. 735; Orr, for Use and Benefit of Walton v. Orr, 1939, 141 Fla. 112, 192 So. 466; Demetree v. State, supra; South Dade Farms, Inc. v. Peters, Fla. 1956, 88 So.2d 891; Dykes v. Dykes, Fla.App.1958, 104 So.2d 598; Schoenthal v. Schoenthal, Fla.App.1962, 138 So.2d 802; Ballengee v. State, supra; State ex rel. Byrd v. Anderson, Fla.App.1964, 168 So.2d 554; 17 C.J.S. Contempt §§ 62 (6), 84(2), 103 and 104.

. This the court was permitted to do. See 13 Fla.Jur., Evidence, § 42.