RAWLS, Judge.
The paternal grandparents of the dependent children have appealed from an order of the Juvenile Court removing the children from their custody and placing them with their natural mother.
Appellants pose the following questions:
1. Did the Juvenile Court have jurisdiction of the issue of custody by virtue of its adjudication of dependency and by a transfer from the Circuit Court in a divorce proceeding ?
2. Can a Juvenile Court exclude the appellants’ counsel from a hearing on the question of custody and deny him the privilege of viewing the social record ?
3. Did the Juvenile Court misinterpret the legal effect of the evidence as a whole ?
On April 17, 1968 the paternal grandfather filed a petition in the Juvenile Court alleging that his four grandchildren were dependent due to the fact that their father was in the hospital with a nervous breakdown and their mother was confined in the county jail. On the same day the Court entered a temporary order finding the children to be dependent for the reasons stated in the petition and granting custody to the grandparents. Prior to the adjudication of dependency, the parents had instituted divorce proceedings, and on July 9, 1968, the parents obtained a final divorce decree which transferred the question of custody to the Juvenile Court pursuant to an agreement of the parents.
At a hearing held on September 5, 1968, the Juvenile Judge excluded counsel for the grandparents. The facts adduced at that hearing reflected that the children were having psychological problems, the result of having witnessed years of fighting between their parents, separations, the father’s attempted suicide, and the mother living in adultery in the home. This hearing was continued in order to obtain psychological reports and school records on the children.
On October 11, 1968, the children’s mother married again in Texas.
*202 In early December the Juvenile Judge denied the grandparents’ attorney the right to see the social record. On December 27, 1968, a final hearing was held on the issue of custody at which the Court permitted the grandparents’ attorney to be present, but refused to permit any evidence concerning facts occurring prior to the last hearing at which the custodians’ counsel was excluded. Counsel for the grandparents proffered that his excluded evidence would show that the man the mother married in Texas was the man living with her and the children prior to her divorce; that in an altercation between the three, the mother shot three times at her husband and then assaulted a policeman who arrived on the scene; and that the mother was jailed because she entered the hospital with a knife for the avowed purpose of killing her husband — in short, that the mother was an unfit person to have custody.
In his narrative of the proceedings, the Juvenile Judge stated:
“The petitioner’s attorney, Mr. Richard J. Wilson, was not allowed to participate in the September 9, 1968, hearing because this hearing was for a determination of dependency, but he was allowed in the hearing of December 27, 1968, inasmuch as the custody was to be decided and he was representing the paternal grandparents who had temporary custody by order of this Court * * *.
“The Court’s wishes were that the children be allowed to remain in the custody of the paternal grandparents until the end of the school year in order to give more time to see how the mother’s new marriage would work out, to give them [the children] an opportunity to continue in the good progress which they were making in school and to allow them to be with the mother over the summer, during which time they could be observed by the Department of Public Welfare of the State of Texas. This was not possible, however, in that during the course of the hearing through their attorney Mr. Wilson, * * * [the grandfather] issued an ultimatum to this Court that if we were not going to give them permanent custody of the children now, they would just as soon the mother take them back. As the Court had no intention of denying the mother an opportunity to take care of these children, upon demonstrating her ability to do so, and as the father still does not appear very emotionally stable (even though his civil rights were restored on June 7, 1968), the Court had no alternative except then to return the children to their natural mother at the conclusion of the hearing.”
In the final order, custody was granted to the natural mother with the home to be actively supervised by the Texas State Department of Public Welfare.
Appellants contend that court decisions on the subject of overlapping jurisdiction between the Circuit Court and Juvenile Court on the issue of custody are in a state of confusion; that the statutes and constitutional provisions setting forth the jurisdiction of the two courts should be construed to give each its modus operandi; that the Juvenile Court has no jurisdiction as to child custody in divorce cases, and its jurisdiction as to dependent children is limited by Section 39.11, Florida Statutes, F. S.A., which authorizes only the “placement” of dependent children (except where conditions warrant severing parental ties) —thus, the Juvenile Court’s jurisdiction is special and limited and its scope cannot be enlarged or conferred by the consent of the parties nor by transfer from the Circuit Court.
We agree that jurisdiction of the subject matter cannot be conferred by agreement of the parties,[1] and that the statutes should be construed to give each court its field of operation rather than render one meaningless or repealed by *203 implication.[2] Had both the Circuit Court and the Juvenile Court concurrently been exercising jurisdiction over these children as to the issue of custody, appellants’ arguments on this point would have raised a justiciable issue. However; as we view the case, the Circuit Court declined to exercise the jurisdiction it had as to custody in the divorce proceedings, and at the time the issue was raised, only the Juvenile Court had jurisdiction. This jurisdiction was conferred by the petition for adjudication of dependency and not by the transfer from the Circuit Court nor by the agreement signed by the parents.
In re S.L.T.[3] is the controlling case. There, just as in the instant case, the Circuit Court was not exercising any jurisdiction over the parties at the time the issue was raised. The District Court of Appeal, Second District, in the opinion authored by Judge Smith, held that the Juvenile Court could, after divorce, declare the children dependent due to lack of support and order the father to make weekly payments to the mother for the children. In so doing, however, the Juvenile Court was not enforcing the Circuit Court’s support order but was operating within its own authority. The opinion stated: “The jurisdiction of the two courts may become overlapping in some aspects of the matter but we view any question of overlapping as raising only the ground of pendency of another action for the abatement of the subsequent overlapping part. * * * [T]he causes of action are different and the jurisdiction is different.”
The Juvenile Court has exclusive original jurisdiction of dependent children domiciled or living within the county or district in which the court is established.[4] When any child shall be adjudicated to be a dependent child, the Juvenile Court shall have the power to place such child under the supervision of the counselor, either in the child’s own home, in the home of a willing relative or in some other suitable place, but such an order may thereafter be modified or set aside by the Juvenile Judge.[5] This is the authority exercised by the Juvenile Court in the instant case. No application has been made to the Court requesting an order terminating its jurisdiction under Section 39.11(7), Florida Statutes, F.S.A. Therefore, we hold that the Juvenile Court was properly vested with jurisdiction.
We find that the lower court erred in not allowing the grandparents’ attorney to participate in the September 9, 1968, hearing on the issue of dependency, in refusing to allow him to view the social record, and in refusing to allow him to present evidence on the unfitness of the mother at the December 27, 1968, hearing. The grandparents were the original petitioners in the Juvenile Court; other than the parents, they were the children’s nearest kin; they were court-appointed custodians; their original custodianship was sanctioned by both the father and the mother; they had a vital interest in the children’s well-being; their home and those of the great-aunts and great-uncles were the only homes reported to be suitable. To hold that petitioning grandparents had no standing to be represented at the hearing on the issue of dependency or on the issue of custody could operate to the detriment of the children and prevent full disclosure of all facts.
The Juvenile Court is a court of record. Its official records consist of petitions, orders, pleadings, etc. Its social records consist of reports of investigations, treatment and other confidential information.[6] These records are not open to public *204 inspection, but the Statute specifically describes who may inspect same and under what conditions. It states: [7]
“All records, except those for traffic violations, shall he inspected only upon order of the judge, by persons deemed by the judge to have a proper interest therein, except that a child and the parents or legal custodians of the child and their attorneys shall always have the right to inspect and copy any official record pertaining to the child.” (Emphasis supplied.)
Both parties concede that the Juvenile Judge considered the reports in the confidential file in making his final decision. These reports are part of the evidence;[8] hearings in the Juvenile Court are conducted in accordance with the rules of evidence used in equity cases in the Circuit Court.[9] We find that the grandparents had a proper interest in the case, and the Judge abused his discretion in not permitting their attorney to view that part of the evidence contained in the social record.
The record also reflects a misunderstanding between the Judge and the grandparents as to “permanent custody.” The paternal grandparents were granted custody under a temporary order prior to a full hearing, but they asked for permanent custody for as long as it was evident that the children were being properly cared for. The Juvenile Court understood their words “permanent custody” to mean the only type of permanent commitment which a Juvenile Court is authorized to make — a permanent commitment for the purpose of adoption which would forever sever the rights of the parents. The Court stated:
“I am absolutely not going to at this point, take the children away from the natural mother permanently and give them to someone else on a permanent basis.”
The Statute authorizing the Juvenile Court to retain jurisdiction over the placement of dependent children does not limit the Court to reconsideration only upon a showing of improper care as contended by the appellants.
The order appealed is reversed with directions to the Court to permit appellants’ attorney to view the social record. The Juvenile Court is directed to entertain a petition on the part of appellants relative to change of custody.
Reversed.
CARROLL, DONALD K., Acting C. J., and WIGGINTON, J., concur.

. Winn & Lovett Grocery Co. v. Luke, 156 Fla. 638, 24 So.2d 310 (1946).

. State Dept. of Public Welfare v. Galilean Children’s Home, 102 So.2d 388 (Fla.App.2d 1958).

. In re S. L. T., 180 So.2d 374, 377 (Fla.App.2d 1965).

. Section 39.02, Florida Statutes, F.S.A.

. Section 39.11(2) (a) and (3), Florida Statutes, F.S.A.

. Section 39.12(2), Florida Statutes, F.S.A.

. Section 39.12(3), Florida Statutes, F.S.A.

. McGuire v. McGuire, 140 So.2d 354 (Fla.App.2d 1962).

.Section 39.09(2), Florida Statutes, F.S.A.