616 So.2d 66 (1993)
FLORIDA DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
STATE of Florida, Appellee.
No. 91-3932.
District Court of Appeal of Florida, First District.
March 4, 1993.
Rehearing Denied April 29, 1993.
Rodney M. Johnson, District Legal Counsel, Dept. of Health and Rehabilitative Services, Pensacola, for appellant.
Robert T. Graham, Asst. State Atty., Pensacola, for appellee.
ZEHMER, Judge.
The Florida Department of Health and Rehabilitative Services (HRS) appeals a final order wherein the circuit court found HRS to be in indirect criminal contempt of court for failing to place two juveniles in a level 8 commitment facility as previously ordered by the court. The court sentenced HRS to pay a fine and certified two questions to this court as issues of great public importance. We do not have jurisdiction to answer the certified questions. We reverse the finding of contempt because the undisputed evidence established that a federal court order prevented HRS from placing the juveniles in a level 8 commitment facility.
The facts that gave rise to the order of contempt are not in dispute. J.G. and T.D., both juveniles, each pleaded guilty to a charge of battery in violation of section 784.03, Florida Statutes, a first-degree misdemeanor. *67 The lower court adjudicated each juvenile delinquent and committed them to HRS for placement in a level 8 (high risk residential) facility. HRS filed a motion for reconsideration in each case averring that the disposition order required HRS to place the juvenile in a high risk facility, that HRS had only two high risk facilities, that both facilities were controlled by a federal court order entered in the case of Bobby M. v. Martinez, No. TCA 83-7003 MMP (N.D.Fla. 1987), and that the order in the federal case prohibited HRS from placing a juvenile who committed a misdemeanor while in a nonresidential commitment program[1] or a juvenile under the age of 13[2] in a level 8 high risk facility. The court denied the motion filed in the T.D. case, and HRS did not appeal the order denying that motion. HRS failed to bring on for hearing the motion in the J.G. case. Subsequently, the state filed in each case a motion for an order to show cause why HRS should not be held in indirect criminal contempt for failing to place each juvenile in a level 8 facility. The trial court consolidated the two cases for purposes of hearing and ruling on this issue and issued a show cause order.
At the hearing on the order to show cause, the state called Mike Berry, HRS's District 1 Commitment Manager, as its only witness. Mr. Berry testified that it was his responsibility to place juveniles in the facility that met the level of restrictiveness ordered by the court. He stated that he was familiar with both the T.D. and J.G. cases, and that he tried to comply with the dispositional orders but could not because "the Bobby M. consent decree disallows the Department or disallows me from placing those clients in the training school." He further testified that HRS did not have any level 8 facilities that accepted misdemeanor offenders or children under the age of 14. Mr. Berry specifically stated that HRS was "unable to follow the Court order." HRS called John Criswell, HRS's Chief of Delinquency Services, as its only witness. Mr. Criswell testified that HRS did not obey the dispositional orders because of the Bobby M. consent decree. Notwithstanding this undisputed testimony establishing that HRS was unable to comply with the dispositional orders, the court found HRS in indirect criminal contempt.
In its order, the court acknowledged HRS's explanation that it had not placed T.D. and J.G. in a level 8 facility because it was "unable" to do so pursuant to the Bobby M. consent decree. The court also found, however, that: (1) the Bobby M. decree represented the federal court's attempt to "imbue the Executive Branch of Florida Government with powers that the Executive Branch does not constitutionally enjoy or cannot legally exercise under both the United States and Florida constitutions"; (2) the Bobby M. consent decree was "voluntarily entered into by the Executive Branch of the Florida Government and the Executive Branch cannot usurp powers it otherwise does not have by entering into an agreement in a lawsuit in Federal district court"; and (3) the "lack or reduction of financial sources available to a Department of the Executive Branch does not enable the Executive Branch to exercise powers exclusively vested in the Judicial Branch of Florida Government." The order cited case law for the proposition that were it not for the court's power to punish for violation of a court order our judicial system would become a mere mockery. The court adjudicated HRS in indirect criminal contempt of court in both cases for failing to place the juveniles in a level 8 facility; it sentenced HRS to pay a fine of $1.00 in each case and certified the following as constituting issues of great public importance:
Whether the Executive Branch of a State government acting under color of a consent decree entered into by the Executive Branch with the Federal Government may refuse to implement a legal and lawful sentence imposed by a Court of competent jurisdiction and as a corollary: Whether the Florida Constitution vests exclusive jurisdiction over sentencing in *68 the Judicial Branch of government or whether the Florida Constitution contemplates a shared arrangement between the Judicial and Executive Branches.
First, we address the matter of certified questions. We do not have jurisdiction to answer the certified questions. The Florida Constitution contains no provision granting district courts of appeal jurisdiction to answer certified questions presented by circuit courts, nor does it contain any provision granting circuit courts the authority to certify questions to the district courts of appeal. See Art. V, §§ 4, 5, Fla. Const. (1991). Chapter 26, Florida Statutes (1991), which specifically sets out the jurisdiction and authority of circuit courts, contains no provision granting circuit courts the authority to certify questions to the district courts of appeal. Likewise, chapter 35, Florida Statutes (1991), which governs district courts of appeal, contains no provision authorizing district courts of appeal to answer certified questions presented by circuit courts. Only county courts have the authority to certify questions to district courts of appeal. See §§ 34.017, 35.065, Fla. Stat. (1991). Thus, the circuit court lacked authority to certify the questions presented in the order of contempt to this court, and this court lacks jurisdiction to answer such questions.
The only issue presented by this appeal is whether the trial court correctly held HRS in indirect criminal contempt where the uncontroverted evidence showed that HRS was unable to comply with the dispositional orders because such compliance would violate the federal court injunctive decree entered in the Bobby M. case. That consent decree[3] expressly proscribes the placement of a juvenile in a training school if, inter alia, the juvenile is adjudicated for a misdemeanor while on nonresidential status or if the juvenile is 13 years of age or under. The federal district court approved and entered the consent decree on July 2, 1987, prior to the dispositional orders entered in the underlying cases, casting it as a final injunctive order directed to HRS.
The trial court in this case erred in finding HRS in contempt of its order. The inability of an alleged contemnor to obey a court order is a good defense to a charge of contempt for violating the order unless the alleged contemnor voluntarily created the inability. United States v. Bryan, 339 U.S. 323, 330, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950) ("Ordinarily, one charged with contempt of court for failure to comply with a court order makes a complete defense by proving that he is unable to comply."); Lake Worth Util. Auth. v. Haverhill Gardens, Ltd., 415 So.2d 125, 127 (Fla. 4th DCA 1982) ("[T]he essence of contempt is violation of a court order that the contemnor was able to comply with."); Schiselman v. Trust Co. Bank, 271 S.E.2d 183, 186 (Ga. 1980) ("The defenses to both civil and criminal contempt are that the order was not sufficiently definite and certain, was not violated, or that the violation was not wilful (e.g., inability to pay or comply)."). See also, 17 C.J.S. Contempt § 19 (1974) ("Failure to obey an order of court does not constitute contempt where the person to whom the order is directed is unable to comply therewith, unless the inability to do so is a result of his own wrongful act."); 17 Am.Jur.2d Contempt § 161 (1990); 11 Fla.Jur.2d Contempt § 58 (1979). The alleged contemnor has the burden of proving at the contempt hearing, by a preponderance of the evidence, why he was unable to obey the order. In the Interest of S.L.T., 180 So.2d 374, 379 (Fla. 2d DCA 1965). See also 11 Fla.Jur.2d Contempt § 58 (1979); 17 Am.Jur.2d Contempt § 161 (1990).
The fact that HRS voluntarily consented to the federal court order that subsequently prevented it from complying with the state court dispositional orders is of no significant import. The United States Court of Appeals held in Badgley v. Santacroce, 800 F.2d 33 (2d Cir.1986), cert. denied, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987), that:

*69 Even if a state court would hold the defendants in contempt for refusing to house inmates at the NCCC, or if compliance would otherwise violate state law, Supremacy Clause considerations require that the judgment of the federal court be respected. In any attempt by a state court to hold defendants in contempt for taking actions required by the judgment of the [federal] District Court, that judgment would provide a complete defense.
* * * * * *
The respect due the federal judgment is not lessened because the judgment was entered by consent. The plaintiffs' suit alleged a denial of their constitutional rights. When the defendants chose to consent to a judgment, rather than have the District Court adjudicate the merits of the plaintiffs' claims, the result was a fully enforceable federal judgment that overrides any conflicting state law or state court order. The strong policy encouraging settlement of cases requires that the terms of a consent judgment, once approved by a federal court, be respected as fully as a judgment entered after trial.
800 F.2d at 38 (citations and footnotes omitted). Therefore, since a consent decree is a fully enforceable federal judgment that will override any conflicting state law or state court order, and regardless of the fact that HRS voluntarily consented to the federal court's decree in the Bobby M. case, the trial court erred in refusing to respect the federal district court's decree and holding HRS in contempt. Accordingly, the contempt order is reversed and the case is remanded with directions to discharge the order to show cause.
REVERSED AND REMANDED.
ERVIN and WIGGINTON, JJ., concur.
NOTES
[1] This was HRS's stated reason for not placing T.D. in a level 8 facility.
[2] This was HRS's stated reason for not placing J.G. in a level 8 facility.
[3] The federal district court had jurisdiction over the Bobby M. action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) & (4). HRS was a named defendant in that case.