METROPOLIS PUBLISHING COMPANY, THE EVENING INDE-PENDENT, INC., THE TAMPA DAILY TIMES, and CAPITAL CITY PUBLISHING COMPANY, as the Representatives of the ASSOCIATED DAILIES OF FLORIDA, an unincorporated association embracing all the daily newspapers in Florida, and all others similarly situated, v. J. M. LEE, as Comptroller of the State of Florida.

170 So. 442 .
Division B.
Opinion Filed November 2, 1936.

108

*C. L. Waller, Claude Pepper* and *Edgar N. Felson,* for Appellants;

*Cary D. Landis,* Attorney General, and *H. E. Carter* and *J. V. Keen,* Assistant Attorneys General, for Appellee.

TERRELL, J.—Appellants, including the News-Journal Co., Inc., and News-Journal Corporation, all being Florida corporations, filed their bill of complaint in the Circuit Court of Leon County seeking to enjoin the Comptroller from requiring the affixation of the documentary stamps as required by Chapter 15787, Acts of 1931, to advertising agreements made between them and their customers to secure commercial advertising space. Copies of the agreements proposed to be made were attached to and made parts of the bill of complaint as Exhibits "A," "B," "C," "D," "E," and "F."

The Comptroller admitted that Exhibits "C" and "D" did not fall within the terms of Chapter 15787 and on such admission the chancellor entered a final decree enjoining the enforcement of the law as to said contracts. A motion to strike the allegations of the bill as to Exhibits "A," "B," "E," and "F" was granted with leave to amend in thirty days. Complainants declined to amend and the bill was dismissed as to them. From the final decree of dismissal as to said Exhibits, the instant appeal was prosecuted.

The sole and only question necessary to be answered is whether or not Chapter 15787, Acts of 1931, requires the affixation of documentary stamps to such agreements as are proposed to be made in the form of Exhibits "A," "B," "E," and "F."

Exhibit "A" is typical of the others and is as follows:

"ORIGINAL          ADVERTISING CONTRACT

"The Tampa Daily Times
     Tampa, Florida

                         Tampa, Florida_____, 193__

    "You are hereby authorized to publish advertising for the undersigned in the Tampa Daily Times, as follows:

_____
_____

for which we agree to pay at the rate of_____payable as used. In the event the advertiser earns a better rate by exceeding his contract, a reduction will be made to correspond with the rate card in effect at this date. In the event the space contracted for is not used, the advertiser agrees to pay for such space as has been used at the rate for that amount of space as shown on the back of this contract. This order is subject to the conditions printed on the back hereof, which are made a part of this contract, and to all of which we agree.

    "It is agreed that change of copy will be furnished by 6:00 P. M. the day before issue in which publication is desired. All copy subject to the approval of the publisher.

    "ALL BILLS FOR ADVERTISING DUE AND PAYABLE ON THE 10TH OF THE MONTH FOLLOWING PUBLICATION. It is agreed that accounts not paid when due shall be charged 8 per cent. interest until paid.

"Accepted:                    Signed_____

_____        By_____
"For the Tampa Daily Times.

    "This agreement is accepted subject to the approval of the publisher of The Tampa Daily Times."

On the back of this agreement is published eight different rates of advertising, viz.: "Local Display Advertising Rates," "Specified Daily Rates," "Monthly Space Rates," "Rates for Annual Contracts," "Special Advertising Rates," "Daily Card Rates," "One Time Big Space Rates," and "Local Reading Notices." Under each of these headings the charge for the space, time inserted, and style of printing is quoted.

It is contended that such agreements are subject to the documentary stamps required by Paragraph Four of Schedule· A, Chapter 15787, Acts of 1931, the pertinent part of which is as follows:

"On promissory notes, non-negotiable notes, *written obligations to pay money,* assignment of salaries, wages or other compensation, made, executed, delivered, sold, transferred, or assigned in the State of Florida, and for each renewal of the same on each $100.00 of the indebtedness or obligation evidenced thereby, 10c."

The title to Chapter 15787, Acts of 1931, is "An Act levying and imposing an excise tax on documents to raise revenue for the support of the State Government, and prescribing penalties for failure to pay said tax." Inspection of the body of the Act discloses that it was intended to apply to bonds, debentures, certificates of stock, sales of stock, agreements to sell stock, promissory notes whether negotiable or not, assignments of salary, wages, or other compensation, and deeds and mortgages of any kind. The tax required is ten cents on each $100.00 of consideration or indebtedness. It also applies to proxies for voting at any business meeting of a corporation for profit and to powers of attorney granted for a defined purpose. In the latter cases the tax is ten cents on each proxy or power of attorney executed.

The agreement brought in question does not come within any of the foregoing documents or instruments. It amounts to nothing more than an executory agreement to purchase advertising space, the amount of which is uncertain and no obligation to pay arises until the advertising is run. It gives the person purchasing an option to secure advertising space on a sliding scale. If he uses a prescribed ·minimum of space he pays at one rate but if he uses less than the prescribed minimum he pays for the amount used at the current rate. If he uses more than the prescribed minimum he is entitled to additional adjustments, and if he ·uses none he pays nothing. It is not an agreement that would support an action for recovery before the advertising is run. Reduced to its final analysis, it grants a privilege to the customer to secure advertising space, there is no certain basis on which the tax can be computed, and it is not squarely within the classifications enumerated in the Act.

There is another reason why the Act in question does not apply to agreements of this kind. It is a taxing statute with a penal provision and the rule is that such statutes should be strictly construed and all doubts or ambiguities resolved in favor of the taxpayer. No tax can be sustained unless clearly within the terms of the statute. United States v. Isham, 17, Wall. 496. 21 L. Ed. 728; State v. Beardsley, 84 Fla. 109, 94 So. 660; State, *ex rel.* Packard, v. Cook, 108 Fla. 157, 146 So. 223; 25 R. C. L. 1092.

· In United States v. Isham, *supra,* it was held that the liability of an instrument to a stamp duty, as well as the amount of such duty, is determined by the form and face of the instrument, and cannot be affected by proof of facts outside of the instrument itself. This doctrine applies with peculiar force to the instrument in question. From its

face money may or may not become due under it. If it becomes due no one can tell how much or when it will be due. It does not fix a debt and promise to pay it. It is not a direct obligation to pay money but it is an execu-tory agreement to take advertising space if desired on the conditions mentioned. It is a mere commercial convenience.

A careful examination of Chapter 15787, Acts of 1931, discloses that it was intended to create a selective tax applicable to a class of instruments recognized by the law merchant as particularly susceptible to the imposition of a documentary tax. We find no indication that it was intended to be all embracing and cover every kind and grade of commercial instrument. The instruments intended to be covered are set out in the Act.

But it is contended by appellee that instruments of the kind in question are embraced in the phrase, "written obligations to pay money." If there were anything in the Act to show that it was intended to be all inclusive there would be substance to this contention but there being nothing to so indicate this and other courts construe such phrases *ejusdem generis,* that is to say as referring to things of the same genus or class as those preceding them, which in this case was promissory notes and non-negotiable notes. Bankers' Trust Co. v. Florida East Coast Ry. Co., 8 Fed. Supp. 874; Haverty Furniture Co. v. United States, 286 Fed. 985; Lee v. Kenan, 78 Fed. (2d) 425; We have examined State, *ex rel.* Rogers, v. Sweat, 113 Fla. 797, 152 So. 432, and Nelson v. Watson, 114 Fla. 806, 155 So. 101, but they applied to different situations which clearly distinguish them from this case.

Appellee contends that the words, "written obligations to pay money" must be given a broad construction to effectuate the purpose of the Legislature, that they cannot be lim-

ited by the narrow rule of *ejusdem generis,* that the statute connotes subjects clearly different one from another that should be given their ordinary meaning, and that an administrative construction of long standing should be followed if not clearly wrong.

The force of this contention is admitted but being a taxing statute the terms of the Act must control its boundaries. Every question raised has been carefully considered and we are forced to the conclusion announced in this opinion.

It follows that the judgment below must be and is hereby reversed.

Reversed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.