RAWLS, Chief Judge
(dissenting).
In my opinion, the chancellor and the majority failed to give proper weight to the history of Section 201.08, Florida Statutes, F.S.A., when read in light of pertinent judicial decisions construing same, and by such failure reached an erroneous conclusion.
As stated in the majority opinion affirming the judgment appealed, the chancellor concluded that the instruments utilized by Maas fell within the verbiage of Section 201.08(1). The history of this subsection which was enacted in 1931 is important when read in conjunction with decisions construing same. In 1934, the Federal District Court, Southern District of Florida, construed this statutory enactment in the case of Bankers' Trust Co. v. Florida East Coast Ry. Co., 8 F.Supp. 874. There the comptroller insisted that the tax imposed was applicable to a certain contract between the railroad and the City of Jacksonville by which the city agreed to furnish electricity over a period of years to the railroad in minimum and maximum quantities and the railroad agreed to make payments in accordance with a scheduled rate. The comptroller contended that the contract constituted a “written obligation to pay money” within the meaning of the statute as it existed at that time. Judge Strum, citing United States v. Isham, 17 Wall (84 U.S.) 496, 21 L.Ed. 728, outlined certain cardinal principles of law applicable to the construction of documentary stamp tax acts, viz.: (1) The liability of an instrument for a stamp duty is determined by the form and face of an instrument and cannot be affected by proof of facts outside of the instrument itself. (2) Such taxes are strictly construed in favor of the taxpayer and cannot be imposed without clear and express words for that purpose. (3) Ambiguities must be resolved in favor of the taxpayer. He concluded that the phrase “written obligations to pay money”, which follows immediately after “promissory notes, non-negotiable notes,” must be construed ejusdem generis, as referring to obligations of the same genus as those specifically named immediately prior to that phrase, which are obligations having for their essential purpose the repayment of money, usually money previously loaned, and that by using the language “any renewal thereof” the legislature did not intend to tax ordinary commercial contracts of the character being considered on appeal. The Fifth Circuit Court of Appeals (78 F. 2d 425) affirmed the District Court, holding that the contract for electricity was not a written obligation to pay money within the meaning of the statute.
The Florida Supreme Court first construed the controverted statute in the case of Metropolis Publishing Co. v. Lee, 126 Fla. 107, 170 So. 442 (1936). There, the publishing company entered into a contract with purchasers of advertising space for a consideration computed in accordance with a rate schedule set out on the reverse side of the instrument. In reversing judgment of the trial court holding the instrument subject to a documentary tax, the Supreme Court cited with approval the *641 foregoing federal decisions, and in addition observed that:
“Inspection of the body of the act discloses that it was intended to apply to bonds, debentures, certificates of stock, sales of stock, agreements to sell stock, promissory notes, whether negotiable or not, assignments of salary, wages, or other compensation, and deeds and mortgages of any kind. The tax required is 10 cents on each $100 of consideration or indebtedness. It also applies to proxies for voting at any business meeting of a corporation for profit and to powers of attorney granted for a defined purpose. In the latter cases the tax is 10 cents on each proxy or power of attorney executed.
“The agreement brought in question does not come within any of the foregoing documents or instruments.
******
“A careful examination of chapter 15787, Acts 1931, Ex.Sess., discloses that it was intended to create a selective tax applicable to a class of instruments recognized by the law merchant as particularly susceptible to the imposition of a documentary tax. We find no indication that it was intended to be all-embracing and cover every kind and grade of commercial instrument. The instruments intended to be covered are set out in the act.”
The court concluded that the doctrine of ejusdem generis was applicable and that in this instance the legislature was referring to the class of instruments enumerated preceding the phrase “written obligations to pay money.”
In Dundee Corp. v. Lee, 156 Fla. 699, 24 So.2d 234 (1945), the Supreme Court apparently overlooked the Metropolis case and the federal decisions, for there it held that the statute “ * * * was intended as a dragnet to catch any kind of an instrument * * * ” containing an obligation to pay money, and that the rule of ejusdem generis should not be applied. However, two years later in De Vore v. Lee, 158 Fla. 608, 30 So.2d 924 (1947), the Supreme Court again construed the intent of the subject statute as to its applicability to a lease and held, “The undertaking of a lessee to pay the rental at specified periods is no more a written obligation to pay money than was the contract under study in the case of Metropolis Publishing Co. v. Lee.”
To say the least the law was not well settled at the beginning of the Legislative Session in 1953. To summarize, at that time the Supreme Court had construed what now appears as subsection (1) of section 201.08 in the Metropolis case as not reaching general contracts calling for the payment of money, but in Dundee held that said statute was designed to “catch any kind of instrument,” and finally in De Vore receded from Dundee and cited with approval the Metropolis case. The stage was thus set for the ensuing action by the legislature when it passed in 1953 subsection (2) of section 201.08 which spells out that the subj ect tax is levied upon “ * * * -written obligations to pay money * * * in connection with sales made under retail charge account services * * I cannot escape the conclusion that in view of the judicial pronouncements then existing the legislature recognized that such retail charge account sales did not fall within the scope of subsection (1) and one of the primary purposes for enactment of subsection (2) was to herd such instrument into the taxing authority’s corral. From the taxing authority’s viewpoint, the difficulty encountered is that the legislature left a gate open when it inserted in subsection (2) the language “ * * * incident to sales which are not conditional in character * * * ”, and out of this gate the instrument being reviewed escaped.
The trial judge and the majority opinion have concluded that the instruments involved here were taxable under subsection 201.08(1) as falling within the general clas *642 sification of a “written obligation to pay money” in spite of the fact that subsection (2) specifically covers “written obligations to pay money * * * in connection with sales made under retail charge account services.” Where a statute contains general and specific provisions' on the same subject matter, each must be given its legitimate field and scope of operation and the specific provision will prevail as to the particular subject covered. See 30 Fla. Jur., Statutes, Section 115 and cases cited therein. Even without reference to this principle, De Vore has foreclosed the matter by holding that the original statute, Section 201.08, does not contemplate the taxation of instruments when the actual debt or liability thereunder is dependent upon a contingency. No debt could, be dependent upon more contingencies than one contemplated by the Flexible Charge Account Agreement involved here.
It is my conclusion that the decision reached by the majority of this court is in direct conflict with the Metropolis and De Vore cases, in that the controversial instruments are no more written obligations to pay money than was the lease in De Vore or the advertising contract in Metropolis.
The gratuitous expression voiced in the last paragraph of the majority opinion relating to a “ ‘gimmick’ by which to circumvent the tax in question” is an interesting treatise upon an issue which was not raised, pleaded, or otherwise tried by the chancellor. I do not think that we are in a position to take a safari into the bleak desert of a record which is devoid of essential facts or a joinder of issues relating to “circumvention” of taxes by the appellee. The parties did not set out upon such a journey nor did the chancellor so travel. The theory so expressed is enticing, but in my opinion must await a proper exploration upon issue being made and joined by the parties and ruled upon by the chancellor— not by trial de novo in the appellate court.
I,therefore, dissent.