195 So.2d 193 (1967)
MAAS BROTHERS, INC., a Florida Corporation, Petitioner,
v.
Fred O. DICKINSON, As Comptroller of the State of Florida, Respondent.
No. 35171.
Supreme Court of Florida.
February 8, 1967.
Rehearing Denied March 9, 1967.
William Terrell Hodges, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for petitioner.
Earl Faircloth, Atty. Gen., and Larry Levy, Asst. Atty. Gen., for respondent.
DRIVER, Circuit Judge.
Maas Brothers, Inc., by their petition for writ of certiorari, seek review of a decision *194 of the District Court of Appeals, 182 So.2d 633, which allegedly conflicts with prior decisions of this Court. The District Court has certified the case to this Court as involving a decision which passes upon a question of great public interest. This certificate conveys jurisdiction to this Court.
Petitioner, Maas Brothers, Inc., operates numerous retail stores throughout the State. The litigation with which we are concerned was initiated by Petitioner filing a complaint for declaratory decree in the Circuit Court seeking to have resolved the issue of whether or not certain instruments described as "Flexible Charge Account Application  Agreements", hereinafter referred to as the basic agreement, used by Petitioner in its credit arrangement with its retail customers, are subject to documentary stamp taxes imposed by Section 201.08, Florida Statutes (1963), F.S.A. The Comptroller, Respondent herein, filed his answer controverting Petitioner's complaint for declaratory decree. The Chancellor entered a declaratory decree based upon the pleadings and motion for summary judgment.
The Chancellor held quite correctly that the basic agreement was patently a conditional sales contract, and consequently exempt from taxation under Section 201.08(2), Florida Statutes (1963), F.S.A., but were taxable under Section 201.08(1). In arriving at this latter ruling the able Chancellor followed the well-accepted principle that two or more instruments may be construed together and by their composite effect, create a valid contract even though each standing alone might be insufficient. Applying this principle, the Chancellor then determined that when the customer signed the sales slip as he is required to do by the basic charge account agreement,[1] a taxable instrument under Section 201.08(1) was created through the composite effect of the basic agreement and the sales slip. This is the keystone of the judicial construction.
*195 On appeal, the District Court affirmed the holding of the Chancellor.
Chapter 201 F.S. 1963, F.S.A.,[2] and its statutory predecessor, Chapter 15787 Acts of 1931, Ex. Sess., is no stranger to the Courts. They have been the subject of several rulings by this and the Federal Courts. These previous rulings construing the aforesaid acts, furnish the pad from which Petitioner launches its assault on the decision of the District Court, it being Petitioner's contention that the ruling of the Chancellor, as affirmed by the District Court, cannot be supported by the construction placed upon Chapter 201 and its predecessor by this Court in Metropolis Publishing Co. v. Lee, 126 Fla. 107, 170 So. 442 (Fla. 1936), DeVore v. Lee, 158 Fla. 608, 30 So.2d 924 (Fla. 1947) and our approval of the holdings of the Federal Courts in Bankers Trust Co. v. Florida East Coast Ry. Co., 8 F. Supp. 874 (S.D.Fla. 1934).
The above-cited cases involved a construction of the Documentary Stamp Tax Act of Florida, now designated Chapter 201 F.S., F.S.A., and turned on the question of whether or not the Act applied to certain instruments. In each of the cases, the Court in applying the fundamental principle that taxes imposed by the Act were taxes upon documents themselves and not upon the transaction contemplated by the documents, found the documents under question non-taxable.
The case of Metropolis Publishing Co. v. Lee supra, grew out of an attempt by the state comptroller to tax certain agreements between the publishing company and its advertising subscribers in which the customer signed an agreement to pay for the advertising in accordance with a set schedule, payment to be made if and when advertising space was furnished by the publisher to the customer. This Court in holding that the contracts in question were not taxable stated of the contract:
"It amounts to nothing more than an executory agreement to purchase advertising space, the amount of which is uncertain, and no obligation to pay arises until the advertising is run. * * * It is not an agreement that would support an action for recovery before the advertising is run. Reduced to its final analysis, it grants a privilege to the customer to secure advertising space, there is no certain basis on which the tax can be computed, and it is not squarely within the classification enumerated in the act."
DeVore v. Lee supra, furnished the opportunity for this Court to recede from its previous holding in Dundee Corporation v. Lee, 156 Fla. 699, 24 So.2d 234 (Fla. 1945). In Dundee Corporation v. Lee supra, liberal construction has been placed upon the application of Chapter 201 extending it beyond its intended scope, but in DeVore v. Lee supra, we reverted to the principles enunciated *196 in Metropolis Publishing Co. v. Lee supra. The issue in DeVore v. Lee supra, was whether or not lease agreements in which a lessee agreed to pay in the future, rents accruing in the future were taxable under Chapter 201.08. This Court, in denying the application of Chapter 201 to the agreements, stated:
"Rent to be paid in the future * * * is not a debt, until it becomes either due or owing".
and with reference to the leases further stated:
"It is not an existing demand, the cause of action on which depends on a contingency, but the very existence of the demand depends on the contingency. It is wholly uncertain whether the lease will ever give rise to an actual debt or liability."
In a rehearing, this Court adhered to its original opinion, and in doing so, made a finding pertinent to the matter now before us:
"It appears from the terms of the leases here involved that the considerations passing to the lessors were the lessees promises in futuro to pay rent a future payment for a future use." (Emphasis supplied.)
In Bankers Trust Co. v. Florida East Coast Ry. Co. supra, the Federal Court for the Southern District of Florida construed the applicability of the Florida Documentary Stamp Act in an opinion which this Court has expressly approved in Metropolis Publishing Co. v. Lee supra. The issue before the Court in Bankers Trust Co. v. Florida East Coast Ry. Co. supra, was whether or not a contract, whereby the City of Jacksonville would furnish electricity to the receivers of the railroad in certain minimum and maximum amounts in accordance with a graduated rate schedule and in which the receiver agreed to pay for a minimum, was a written obligation to pay money and subject to the Documentary Stamp Tax Act. The District Court concluded and so ruled that the obligation was not subject to the tax and, on appeal to the Fifth Circuit Court of Appeals, the District Court was affirmed, Lee v. Keenan, 78 F.2d 425, 100 A.L.R. 869 (5th Cir.1935). The Circuit Court of Appeal stated at p. 426 of its Opinion that:
"It is only an executory agreement for the sale of a commodity, and no obligation to pay money arises under it unless and until the commodity is delivered."
We perceive little, if any, distinction between the effect of the instruments under consideration in the above-cited cases and Petitioner's basic agreement and sales slip now before this Court. The instrument now under examination is dependent upon the happening of a contingency before any obligation is created; viz.: the purchase of goods and the signing of a sales slip for the same. The happening of this contingency is in the future and may or may not ever come to pass. In Metropolis Publishing Co. v. Lee supra, the customer agreed to pay for advertising if and when it was furnished and he was billed for it. In Bankers Trust Co. v. Florida East Coast Ry. Co. supra, the customer agreed to pay in the future for electricity to be furnished in the future, payment to be made if and when electricity was furnished and the customer billed; likewise, in DeVore v. Lee supra, the lessee promised at some time in the future to pay for rents accruing in the future, if and when they accrued. In the case now under consideration we find a strongly similar arrangement whereby Petitioner agrees to extend credit to its customers for future purchases and the customer agrees to pay a fixed sum on his account according to a set schedule if and when credit is extended, goods are purchased and a sales slip signed and customer is billed. Viewed in the light of the above-cited authorities, Petitioner's "Flexible Charge Account Application  Agreement" falls within the definition of what was described in the Metropolis Publishing Co. case as a "mere commercial convenience." It is an arrangement in common usage and is to be found in the practice *197 of extending credit through gasoline credit cards, credit cards for food and lodging and the like. It is akin to the application a householder makes for utilities service such as water, electricity, natural gas or telephone, and in which the customer signs a written obligation that he will in the future pay for such services or commodities as he may consume and for which he is billed.
Careful consideration has been afforded the reasoning of the able Chancellor in which he applied the principle that:
"If the holder of a contract could recover a judgment by pleading, and prove the contract and non-payment, the contract constitutes such a promise to pay as is within the statute and is taxable."
This principle was correctly stated by the Chancellor in his ruling, but we do not deem it applicable herein. The sales slip which the Chancellor relied upon to increment the basic agreement into the class of taxable contracts is not before us, since it is not a part of the record nor, apparently, was it before the Chancellor, but in any event it apparently consisted of nothing more than an acknowledgment of delivery of goods and did not in itself contain any promise to pay.
Consequently, it can add nothing to the efficacy of the basic agreement, since the sales slips are not the basis for determining the sums payable Petitioner by its customers but would amount simply to secondary evidence of the monies due under the basic agreement should the balance owing be disputed.
We are fortified in our holding by the legislative history of Chapter 201. This history is recited in Judge Rawls's dissenting opinion filed in the District Court, and we will not elaborate on the discussions contained therein, deeming it sufficient to point out that the judicial pronouncements of this Court found in Metropolis Publishing Co. v. Lee supra, and DeVore v. Lee supra, were before the legislature and if it had been intended to bring instruments of the nature we are concerned with here under the law, the legislature had every opportunity to do so, but did not.
It may well be, as was pointed out in the dissenting opinion filed by the District Court in this cause:
That "one of the primary purposes for enactment of Subsection (2) was to herd such instruments into the taxing authority's corral. From the taxing authority's viewpoint, the difficulty encountered is that the legislature left the gate open when it inserted in Subsection (2) the language `* * * incident to sales which are not conditional in character * * *' and out of this gate the instrument being reviewed escaped."
In the same vein, it might be added that the marking and branding of the instruments to be taxed is a legislative function. The judicial function is to inspect disputed brands and to separate the taxable from the non-taxable, and if the instruments such as the one we are here concerned with are unbranded mavericks, the taxing authority must look to the legislature to brand them taxable; not this Court.
We hold, for the reasons stated, that Petitioner's "Flexible Charge Account Application  Agreement" is not subject to the tax imposed by Section 201.08(1).
We might terminate here; however, to avoid any misapprehension as to the duty of the Court's function, a brief comment is in order on language contained in the opinion of the District Court wherein it described Petitioner's arrangement as having "every earmark of a device or gimmick", by which to circumvent the tax in question, and thereafter alluded to what is considered a duty to:
"Support the public revenues in no less degree than the duty not to impose a tax by judicial fiat."
*198 While we are confident it was not so intended, this language might be misconstrued to mean that the taxing authority stands in a favored position before the Court. This is not true. It is a fundamental rule of construction that tax laws are to be construed strongly in favor of the taxpayer and against the government, and that all ambiguities or doubts are to be resolved in favor of the taxpayer. This salutary principle is found in the reason that the duty to pay taxes, while necessary to the business of the sovereign, is still a duty of pure statutory creation and taxes may be collected only within the clear definite boundaries recited by statute, State ex rel. Seaboard Air Line R. Co. v. Gay (1948) 160 Fla. 445, 35 So.2d 403; 51 Am.Jur. Taxation Section 650.
The decision of the District Court of Appeal, First District, is quashed, with directions to remand to the Trial Court with instructions to enter a decree in accord herewith.
THORNAL, C.J., and THOMAS and O'CONNELL, JJ., concur.
ERVIN, J., dissents with Opinion.
ROBERTS, J., dissents and agrees with ERVIN, J.
CALDWELL, J., dissents.
ERVIN, Justice (dissenting):
I do not believe the decision of the District Court of Appeal, First District, in Maas Brothers, Inc. v. Green, 182 So.2d 633, should be disturbed.
The customer's flexible charge account agreement, coupled with his signed sales slips, constitutes his written agreement to pay the merchant the balance due on his account as reflected in the sales slips. The agreement provides the monthly balance reflected by the sales slips is to be reduced by an installment payment which is determined by reference to a table of payments in the agreement. According to the table, for example, if the monthly balance shown by the sales slips is between $180 and $200 the installment payment to be made is $40.
The District Court adopted the construction of the chancellor concerning the effect of the flexible charge account agreement and the sales slips. He said the two taken together constituted the contract between the merchant and the customer, adding
"* * * the customer by signing the sales slips enters into a written obligation to pay the plaintiff [merchant] the amount of the purchase price of the merchandise described in the sales slips in installments determined from the application of the terms [the table] of the flexible charge account agreement. This promise is in writing. It is unconditional. It is a promise to pay specified sums of money at stated intervals. It necessarily follows that the signing of each sales slip creates a separate, distinct and independent written obligation to pay money in the future subject to taxation under Section 201.08(1), F.S."
This interpretation appears to me to be the correct version of the arrangement. Therefore, I conclude the majority opinion which relies primarily upon Metropolis Publishing Co. v. Lee, 126 Fla. 107, 170 So. 442 (Fla. 1936), and DeVore v. Lee, 158 Fla. 608, 30 So.2d 924 (Fla. 1947), is incorrect. In those cases the instruments involved did not with certainty pinpoint the sum of money agreed to be paid. In the first cited case the customer signed an agreement (which was sought to be subjected to the documentary stamp tax) to *199 pay for certain advertising in accordance with a set schedule, payment to be made if and when advertising space was furnished by the publisher to the customer. Of it, our Court said:
"* * * It amounts to nothing more than an executory agreement to purchase advertising space, the amount of which is uncertain, and no obligation to pay arises until the advertising is run. * *" (170 So. at 444)
In the second cited case a lessee agreed in a lease agreement to pay in the future rents accruing in the future. Of it, our Court said:
"* * * Rent to be paid in the future * * * is not a debt, until it becomes due or owing; * * *" (30 So.2d at 927)
and
"`* * * It is wholly uncertain whether the lease will ever give rise to an actual debt or liability.'" (30 So.2d at 926)
In the instant situation the balances due by the customer are not uncertain amounts which may never be incurred. They are definite amounts reflected in the two documents evidencing the obligation to pay the same. It is an easy mathematical problem to compute the documentary stamp taxes payable on said running account amounts which are reflected in the written agreement pursuant to F.S. § 201.08(1), F.S.A.
The majority opinion of the District Court approved the chancellor's statement that it is well settled law a contract may consist of two or more documents which must be construed together to determine the rights and obligations of the parties. The late Judge Sturgis, who wrote the majority opinion, cautioned that the courts should not allow the "gimmick" of the two instruments in the instant case to circumvent the documentary tax. I agree.
ROBERTS, J., concurs.
NOTES
[1] BALANCES | From $10 $100 $150 $200 $250
 > To $00 $150 $200 $250 $300
 |

FLEXIBLE CHARGE ACCOUNT AGREEMENT
I, the undersigned Buyer, hereby apply to Maas Brothers, Inc. (hereinafter referred to as Seller) for a Flexible Charge Account and, as a basis for granting same, there is submitted on the reverse side hereof certain information which, to the best of my knowledge and belief, is true and correct.
If such a Flexible Charge Account is opened by Seller, I agree:
1. To pay Seller monthly within ten (10) days after Seller mails me a monthly account statement, the minimum payment required by the table below for the balance then due on my account:

 _____________________________________________________
Balances | From $10* $ 75 $100 $120 $140 $160 $180
 > To 75 100 120 140 160 180 200
 |_____________________________________________________
Minimum Pmt. $10 $ 15 $ 20 $ 25 $ 30 $ 35 $ 40

* Balances under $10.00 are payable in full.
2. To govern purchases made by me, or members of my family, so that my unpaid balance at any time will not exceed $200.00. If in any month my balance does exceed that amount, I promise to pay at least 1/5 of the balance.
3. To sign the sales slip at the time of each purchase made in your store and, in the case of purchases made by telephone or mail, to accept your sales slip evidencing such sale and your record of delivery of the goods purchased as conclusive evidence of such sale and delivery. I hereby authorize Seller as my agent to sign sales slips for purchases made by telephone or mail on my behalf.
4. Title to all merchandise purchased under this contract shall remain in the Seller and will pass to me only after the cash price and the time price differential applicable thereto have peen paid in full.
[2] Section 201.08 Subsection (1) provides:

"On promissory notes, non-negotiable notes, written obligations to pay money, assignment of salaries, wages, or other compensation, made, executed, delivered, sold, transferred, or assigned in the state, and for each renewal of the same on each one hundred dollars of the indebtedness or obligation evidenced thereby, the tax shall be fifteen cents on each one hundred dollars or fraction thereof. Mortgages which incorporate the certificate of indebtedness, not otherwise shown in separate instruments, are subject to the same tax at the same rate."
Section 201.08 Subsection (2) provides:
"On promissory notes, non-negotiable notes, written obligations to pay money, or other compensation, made, executed, delivered, sold, transferred, or assigned in the state, in connection with sales made under retail charge account services, incident to sales which are not conditional in character and which are not secured by mortgage or other pledge of purchaser, the tax shall be fifteen cents on each one hundred dollars or fraction thereof of the gross amount of the indebtedness evidenced by said instruments, payable quarterly on such forms and under such rules and regulations as may be promulgated by the comptroller. No documentary stamp shall be required to be attached to instruments under the provisions of this subsection."