294 So.2d 27 (1974)
The CITY OF PUNTA GORDA, Florida, a Municipal Corporation, et al., Appellants,
v.
McSMITH, INC., a Florida Corporation, Appellee.
No. 73-14.
District Court of Appeal of Florida, Second District.
March 27, 1974.
*28 Frank Wotitzky, of Wotitzky, Wotitzky & Johnson, Punta Gorda, for appellants.
John M. Hathaway of Hathaway & Norton, Punta Gorda, for appellee.
BOARDMAN, Judge.
Appellee/plaintiff, McSmith, Inc., a Florida corporation, planned to construct a travel trailer park on its tract of land abutting Shell Creek between the headwaters of the creek and the waterworks dam of the City of Punta Gorda. Accordingly, it proceeded to acquire certain permits, including a conditional permit from the Department of Air and Water Pollution Control for construction of a sewage treatment plant and evaporation percolation pond. Subsequently, McSmith learned that the city council had enacted a resolution in support of the recision and revision of the existing zoning classification on McSmith's land. The basis of this action was the possibility of contamination of the city's water supply if McSmith were to proceed with its original plans, in violation of Chapter 65-1367 and Chapter 67-1957, Laws of Florida.
McSmith filed suit against appellant/defendants, City of Punta Gorda, for injunctive relief to prevent a zoning change and for a declaratory judgment alleging that the proposed plans were not in conflict with the requirements of Chapter 65-1367 and Chapter 67-1957, Laws of Florida, but, rather, are in compliance with this act and "... all other applicable *29 law... ." The City of Punta Gorda answered, asserting as an affirmative defense that construction of sewage disposal devices in accordance with plaintiff's plans would violate the aforementioned special laws. The city filed its counterclaim and sought to enjoin McSmith from constructing or operating any sewage disposal device within 200 feet of Shell Creek or otherwise.
The trial court held that the city lacked standing to bring the counterclaim for injunctive relief under Chapter 386 as that matter was exclusively within the jurisdiction of the State Division of Health; that McSmith's request for injunctive relief was premature, inasmuch as no change in zoning status of the subject property had in fact been made; and that the sewer collection devices, such as collection pipe systems and lift stations, that McSmith planned to construct within 200 feet of Shell Creek, were not sewer disposal devices such as are prohibited by Chapter 65-1367 and Chapter 67-1957, Laws of Florida.
The trial judge ruled that the city had no standing to obtain injunctive relief under Chapter 386. The counterclaim of the city, however, was not founded on violation of Chapter 386, but, rather, on violation of Chapters 65-1367 and 67-1957. Assuming that the plans McSmith proposed to implement did in fact violate the statute, the city has standing to restrain, enjoin, or otherwise prevent their implementation, if such acts occur within the city limits. Chapter 65-1367, § 4, Laws of Florida. If the violations occur outside the city limits of Punta Gorda, enforcement of the law against violation becomes the duty of the state attorney of the Twelfth Judicial Circuit of Florida. Chapter 65-1367, § 6, Laws of Florida. While the State Division of Health has jurisdiction under Chapter 386 of the Laws of the State of Florida, F.S.A., to abate pollution, we do not construe such jurisdiction to be exclusive or to prohibit action by the municipality and deprive it of the right to proceed under another chapter to protect its supply of drinking water. See, also, Chapter 168, Laws of Florida, F.S.A. The State Division of Health has jurisdiction over pollution. This action is founded upon protection of a municipality's drinking water from potential contamination which, if it came into being, would also be pollution. The general rule of legislative construction presumes later statutes are passed with knowledge of prior existing laws, and favors a construction which gives each a field of operation, rather than have one meaningless or repealed by implication. State Department of Public Welfare v. Galilean Children's Home, Fla. App.2nd, 1958, 102 So.2d 388. We conclude that standing to sue did exist.
Appellee cites the case of Town of Palm Beach Shores v. Colonnades, Inc., Fla. App.4th, 1968, 216 So.2d 78, in support of its contention that State Division of Health, by virtue of its authority provided in Chapter 381, Florida Statutes, F.S.A., has exclusive jurisdiction of the controversy and that the municipality has no standing to sue for an injunction. The cited case is distinguishable on facts as it dealt with water pollution in general. Whereas, the instant case deals with the potential contamination of a city's drinking water, a matter over which a municipal corporation has standing to obtain an injunction under Section 168.16, Florida Statutes, F.S.A., We have read the other authorities cited and discussed in appellee's brief and opine them to be likewise distinguishable as ruling upon the propriety of action by the State Division of Health against pollutors.
Chapter 65-1367, § 3(b), Laws of Florida provides:
Section 3. It is unlawful for any person, firm, corporation, or public body to do or commit within the county of Charlotte any of the following acts, to-wit:
* * * * * *
(b) The construction, reconstruction, extension or alteration of any privy, cess pool, septic tank, drain field, or *30 other sewerage disposal device within two hundred (200) feet, measured from the nearest mean high water mark, of Shell creek and Prairie creek, from their headwaters to the dam of the waterworks system of the city of Punta Gorda, or their tributaries, ...
(Emphasis supplied).
It is not disputed that McSmith proposes to construct sewage collection devices such as collection pipe systems and/or lift stations within the above-proscribed 200-foot provision. The dispute centers around whether these "collection" devices are "disposal" devices as set forth in the statute. We do not have to address ourselves to this question since the collection pipes and lift stations would clearly be "extensions" of a sewage disposal device. Accordingly, McSmith's proposals are in violation of the prohibition of Chapter 65-1367, Laws of Florida, supra.
Reversed and remanded for reinstatement of appellants' counterclaim and adversary proceedings thereon.
HOBSON, A.C.J., and JOANOS, JAMES E., Associate Judge, concur.