571 So.2d 527 (1990)
BARNETT BANK OF SOUTH FLORIDA, et al., Appellants,
v.
STATE of Florida, DEPARTMENT OF REVENUE, Appellee.
No. 90-1551.
District Court of Appeal of Florida, Third District.
December 11, 1990.
Akerman, Senterfitt & Eidson, and Russell B. Hale and Kathryn B. Nixon, Orlando, for appellants.
Robert A. Butterworth, Atty. Gen., and Lealand L. McCharen, Asst. Atty. Gen., and Donald L. Crosby, Asst. Atty. Gen., for appellee.
Before JORGENSON, LEVY and GODERICH, JJ.
LEVY, Judge.
Barnett Bank of South Florida, N.A., Sun Bank/Miami, N.A., and Southeast Bank, N.A., [hereafter "the Banks"], each filed separate petitions to the Florida Department of Revenue seeking a declaratory judgment that home equity loans secured by mortgages on real property are not subject to documentary stamp taxation under Section 201.08(1), Florida Statutes (1989). The Department of Revenue consolidated the Banks' petitions and issued a single *528 declaratory statement finding that the mortgage recordings were subject to the documentary stamp tax under Section 201.08(1). The Banks appeal and we affirm.
The transactions in this case were loans evidenced by a credit agreement and a mortgage. The Banks would offer a borrower a revolving credit home equity loan secured by a mortgage on the borrower's principal residence. The credit agreement grants the borrower the right to borrow money up to a preset limit. The borrower promises to repay the Banks any amounts advanced under the line of credit, together with certain costs and finance charges. The credit agreement is incorporated by reference into the mortgage, which is recorded in the public records of the county where the real property securing the agreement is located. Specifically, the mortgage secures the loan of the agreement stating that the borrower may borrow "an undetermined sum not to exceed the maximum principal amount of $30,000.00." The mortgage goes on to state that: "The Agreement by reference is made a part hereof to the same extent as though set out in full herein."
Section 201.08(1) was amended in 1977 to add mortgages and other evidences of indebtedness to the category of documents subject to documentary stamp tax. Prior to 1977, this Section only imposed the tax on promissory notes and other written obligations to pay money by providing in part:
On promissory notes, nonnegotiable notes, written obligations to pay money and for each renewal of the same on each $100 of the indebtedness or obligation evidenced thereby, the tax shall be 15 cents on each $100 or fraction thereof.
§ 201.08(1), Fla. Stat. (1975). In 1977, the Florida Legislature amended this Section by specifically adding mortgages as being subject to documentary stamp taxes. The Section currently reads, in pertinent part:
On mortgages, trust deeds, security agreements, or other evidences of indebtedness filed or recorded in this state, and for each renewal of the same, the tax shall be 15 cents on each $100 or fraction thereof of the indebtedness or obligation evidenced thereby.... When there is both a mortgage, trust deed, or security agreement and a note, certificate of indebtedness, or obligation, the tax shall be paid on the mortgage, trust deed, or security agreement at the time of recordation.
§ 201.08(1), Fla. Stat. (1989).
In interpreting the meaning of Section 201.08(1), our starting point is the language of the statute itself. It is a fundamental principle of statutory construction that legislative intent and policy concerns must control our construction of statutes and that the determination as to the intent of the legislature is based upon the plain and ordinary meaning of the language in the statute itself. Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984); St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla. 1982); S.R.G. Corp. v. Department of Revenue, 365 So.2d 687, 689 (Fla. 1978); Reino v. State, 352 So.2d 853, 860 (Fla. 1977). As stated by the Florida Supreme Court in Holly v. Auld, 450 So.2d at 219:
`[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.' A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 1144, 137 So. 157, 159 (1931). See also Carson v. Miller, 370 So.2d 10 (Fla. 1979); Ross v. Gore, 48 So.2d 412 (Fla. 1950). It has also been accurately stated that courts of this state are `without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.' American Bankers Life Assurance Company of Florida v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968) (emphasis added).
Applying these basic principles of construction, we find that it was the intent of the Legislature to provide that mortgages are subject to the documentary stamp tax. The Legislature specifically added the *529 word "mortgages" into the class of documents subject to documentary stamp tax and "the Legislature must be assumed to know the meaning of the words and to have expressed its intent by the use of the words found in the statute." S.R.G. Corp. v. Department of Revenue, 365 So.2d at 689. We need look no further than the language of the statute itself in making our determination that the clear intent of the Legislature was to include mortgages as being subject to the tax.
However, the Banks argue one step further that, due to the fact the obligation to pay under the mortgages involved in the present case is contingent upon the advancement of sums under the underlying agreement, the mortgage documents only evidence a "contingent obligation" and, as such, are exempt from documentary stamp taxation. In support of this argument, the Banks refer to the cases of Maas Bros., Inc. v. Dickinson, 195 So.2d 193 (Fla. 1967) (flexible charge account agreement exempt because no obligation to pay until charge is made against account) and Metropolis Pub. Co. v. Lee, 126 Fla. 107, 170 So. 442 (Fla. 1936) (agreement to pay for advertising exempt because no obligation to pay arose until advertising services rendered), which they say stand for the proposition that, if a contingency must occur before an obligation to pay becomes fixed, then the document evidencing such a conditional obligation is exempt from documentary stamp tax.
First, we note that the cases cited by the Banks do not deal with the taxability of mortgages and, furthermore, were all decided prior to the 1977 amendments. More importantly, at the time the Legislature amended Section 201.08(1) to include mortgages, Section 697.01(1), Florida Statutes (1977), was in existence and specifically recognized that mortgages as a class of instruments can be conditioned or defeasible.[1] It is generally presumed that the Legislature has knowledge of prior existing laws when it passes later legislation. Oldham v. Rooks, 361 So.2d 140 (Fla. 1978); City of Punta Gorda v. McSmith, 294 So.2d 27 (Fla. 2d DCA 1974). Furthermore, "[t]he general rule of legislative construction ... favors a construction which gives each [enactment] a field of operation, rather than have one meaningless or repealed by implication." City of Punta Gorda, 294 So.2d at 29. At the time of the 1977 amendments, Section 697.01(1) was in existence and defined mortgages as being "conditioned or defeasible." Thus, it is clear that the Legislature expressly intended to put this conditional or contingent type of document into the class of documents subject to the documentary stamp tax when it specifically added mortgages to the class of instruments in Section 201.08(1) that are subject to documentary stamp taxation.
As a final note, we recognize that the most recent case dealing with this issue, after the 1977 amendments, is the case of Department of Revenue v. Lincoln Pointe Assoc., Ltd., 544 So.2d 291 (Fla. 1st DCA). In the Lincoln Pointe case, the First District Court of Appeal held that the tax is to be determined based on the information on the face of the document recorded and not on information derived from other documents.[2],[3]
*530 As the Banks correctly point out, the parties in Lincoln Pointe had stipulated in advance that the documents were taxable. Thus, the central issue in the case revolved around the amount of the tax on the document, as opposed to the validity of the documentary stamp tax. However, the fact that the First District did determine how much tax would have to be paid implies that the Court felt the imposition of the tax was appropriate in the first place. Thus, inherent within the Lincoln Pointe opinion is the determination that such a tax was properly imposed.
In conclusion, we find that the promise to pay contained in the credit agreement is a part of the face of the recorded mortgages, that the mortgages are subject to the documentary stamp tax, and that the taxable amount is properly calculated based upon the maximum loan amount. As correctly pointed out by the Department of Revenue, it is the mortgage document itself, as an evidence of indebtedness, that is being taxed  not the debt  and thus it is the recording of the mortgage document which triggers the imposition of the documentary stamp tax.
As specified in the statutory language, it is the "mortgage" (a written document) and "other evidences of indebtedness" that are taxed upon being "filed or recorded". The tax is not on the debt, but rather, it is on the document and the recording of that document.
Affirmed.
NOTES
[1] Section 697.01(1) provides:

697.01 Instruments deemed mortgages. 
(1) All conveyances, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages.
[2] In Lincoln Pointe, a first mortgage for $23,800,000 and a second mortgage for $5,950,000 were recorded. Each mortgage contained the qualifying language "or so much thereof as may be advanced, to be paid in accordance with a note." Two promissory notes were executed simultaneously with the mortgages but were not attached to or physically incorporated in the mortgages. The notes referred to each other and the respective mortgages and provided that they "evidence a single loan in the aggregate amount of $23,800,000." Id. at 292. The mortgages were subsequently recorded without the notes. A handwritten legend on the first mortgage indicated that the amount financed under the note it secured would not exceed $20 million. No such notation appeared on the face of the second mortgage. The parties stipulated that the documents were taxable and that a total amount of $23,800,000 was actually advanced under the promissory notes. Id.

The department sought to impose tax on the maximum amount secured by the mortgages, or $29,750,000. The taxpayer claimed it could only be taxed on the basis of the actual amount of indebtedness, or $23,800,000. The court held that the taxable amount of a mortgage is to be determined solely from the face of the document recorded (in that case, the mortgage), without reference to "other documents" (in that case, the notes) which were not attached to the mortgage nor whose provisions were recited in the mortgage. The taxable base of the first mortgage was held to be $20,000,000 due to the express limitation contained on the face of the mortgage. Id. at 294. However, since the second mortgage contained no such limitation, the taxable amount was held to be based on the face amount of the mortgage rather than the lesser amount advanced under the notes. Id.
[3] In the present case, we note that the credit agreement is incorporated into the mortgage and thus the agreement can be considered without violating the Lincoln Pointe tenet against consideration of extrinsic elements. The mortgage secures the loan of the agreement stating that the borrower may borrow up to a maximum amount of $30,000.00. The mortgage then goes on to state: "The Agreement by reference is made a part hereof to the same extent as though set out in full herein." By virtue of the recitation of incorporation, the mortgages incorporate the credit agreements, and accordingly, the promise to pay contained in the agreement is made part of the face of the recorded mortgage.