656 So.2d 1382 (1995)
COMPUTER SALES INTERNATIONAL, INC., Appellant,
v.
STATE of Florida, DEPARTMENT OF REVENUE, a state agency, Appellee.
No. 94-402
District Court of Appeal of Florida, First District.
Opinion filed July 13, 1995.
Mark E. Holcomb of Holland & Knight, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Lealand L. McCharen and C. Lynne Chapman, Asst. Attys. Gen., Office of Atty. Gen., Tallahassee, for appellee.

*1383 ON MOTION FOR REHEARING, REHEARING EN BANC AND CERTIFICATION

ERVIN, Judge.
We withdraw our prior opinion of April 6, 1995, and substitute the following in its place.
This is an appeal from a summary judgment entered in regard to a documentary stamp tax assessment on various computer equipment leases between appellant, Computer Sales International, Inc. (CSI), and numerous Florida lessees. CSI contends that the assessment was erroneous, because the leases did not contain an unconditional promise to pay money at the time they were executed by the prospective lessees in Florida, or have a taxable situs in Florida, as is required by section 201.08(1), Florida Statutes (1983). We affirm, because once the leasing contracts were completed by the execution of the "Certificate of Acceptance," which occurred in Florida, the leases contained an unconditional promise to pay and there had a taxable situs.
The record reflects that CSI, whose headquarters are located in St. Louis, Missouri, after being contacted by prospective lessees in Florida, forwarded forms of the Master Lease Agreement and Equipment Schedule from its St. Louis office either directly to the prospect or to CSI's Tampa marketing office for presentation. Thereafter, if it desired to pursue a lease, the potential lessee signed the documents and mailed them to CSI, or gave the documents to CSI's marketing representative in Tampa who, in turn, mailed the documents to St. Louis.
After it reviewed the documents for acceptability, CSI executed them in St. Louis and filled in the blank portions of the Equipment Schedule, identifying the equipment to be leased, the monthly rental amount, initial term and the anticipated installation date.[1] The contract was not then finalized, however, because, under the provisions of the Master Lease Agreement, neither the lease period nor the payment obligation could commence until the equipment to be leased was installed at the lessee's location in Florida; thus, under the terms of the contract, the date of the equipment's installation established the commencement date of the lease. The actual date of installation was not, however, specified in either the Master Lease Agreement or the Equipment Schedule. Rather, upon installation, a lessee was required under paragraph 2.1 of the Master Lease Agreement to sign a separate certificate confirming delivery and acceptance of the equipment, i.e., the "Certificate of Acceptance."[2]
It is therefore obvious from all relevant terms of the Master Lease Agreement that the lease could not commence until the date each unit of equipment was actually installed, and the only information in the record designating this date is the certificate, which the lessees executed in Florida at some time after the execution of the prior two documents. Thus, the Certificate of Acceptance was essential to the formation of the contract, which could not be enforced without proof of the equipment's delivery.
During the audit period of June 1, 1985 through January 31, 1989, CSI entered into a number of leases with Florida lessees. Based upon its analysis of Florida law, CSI determined that no stamp tax was due on any of the leases. As a result, CSI did not collect the tax from the lessees or pay the same to the Department. At the conclusion of its audit, the Department issued a proposed assessment of documentary stamp tax, penalties and interest against CSI due to its failure to pay the tax. Thereafter, CSI filed *1384 its action against the Department, challenging the assessment, which culminated in the entry of a final summary judgment against CSI.
Appellant argues inconsistently that the lessee's promise to pay became fixed as of the commencement date, a date which could only be determined from proof of the equipment's installation;[3] yet it also contends that because such proof, i.e., the Certificate of Acceptance, was not incorporated by reference into either the Master Lease Agreement or Equipment Schedule and did not contain any promise to pay, the certificate was extrinsic evidence and could not be considered in determining the taxability of the leases. We cannot agree.
In our judgment, it was not necessary under the circumstances for the Certificate of Acceptance to be specifically incorporated by reference within the Master Lease Agreement or the Equipment Schedule in order for it to be considered an essential part of the contract. The rule is clear that when a writing expressly refers to and sufficiently describes another document  in this case, the Certificate of Acceptance  the other document is to be interpreted as part of the writing. Woodward Tire Co. v. Hartley Realty Inc., 596 So.2d 1114 (Fla. 3d DCA), review denied, 605 So.2d 1264 (Fla. 1992). Moreover, the rule requiring that writings which evidence a single agreement must be construed together is not necessarily confined to instruments executed at the same time by the same parties for the same purpose. Rather, instruments entered into on different days but containing the same subject matter may, under appropriate circumstances, be regarded as one contract and interpreted together. Cushman v. Smith, 528 So.2d 962 (Fla. 1st DCA 1988).
Because CSI, the lessor, had no right to enforce the terms of the lease until the commencement date, the Certificate of Acceptance, which was the only writing in the record evidencing this date and which the lessee executed last in Florida, must be considered an integral part of the leasing agreement and, therefore, be construed together with both the Master Lease Agreement and the Equipment Schedule. If, as we conclude, the Certificate of Acceptance is properly considered as part of the same contract, clearly the taxability and the amount of the tax due are capable of being determined from the four corners of the face and form of the contract. See Department of Revenue v. Lincoln Pointe Assocs., Ltd., 544 So.2d 291 (Fla. 1st DCA 1989).
In its motion for rehearing, CSI cites Maas Bros., Inc. v. Dickinson, 195 So.2d 193 (Fla. 1967); Choctawhatchee Electric Cooperative, Inc. v. Green, 132 So.2d 556 (Fla. 1961), cert. denied, 369 U.S. 829, 82 S.Ct. 844, 7 L.Ed.2d 794 (1962); and Department of Revenue v. Lincoln Pointe Assocs., Ltd., 544 So.2d 291 (Fla. 1st DCA 1989), in support of its argument that this court erred in considering the Certificate of Acceptance as an essential part of CSI's lease. The crux of its argument is that as the Certificate of Acceptance was not specifically incorporated within the two instruments which it considers establish the contract between the parties  the Master Lease Agreement and the Equipment Schedule  the Certificate of Acceptance must be extrinsic to the documents and therefore inadmissible. Again, we cannot agree.
Florida case law, requiring that the terms of a separate, unattached document be specifically incorporated within those of an *1385 instrument before the unattached document can be considered a part of the same contract for documentary stamp tax purposes, does not, in our judgment, apply to a case such as that at bar in which a person denies that the document is subject to the tax and fails to submit the document for recordation. Although this court's opinion in Lincoln Pointe reaffirmed the rule that the taxability and the amount of the documentary stamp tax can only be ascertained from the four corners of the instrument submitted for recordation and not from extrinsic evidence, there are several significant differences between the facts in Lincoln Pointe and those at bar: First, the document in question here, involving a lease of tangible personal property, was not one required by law to be recorded, whereas those in Lincoln Pointe  two mortgages  were. Section 201.08(1), Florida Statutes (1983), requires that the tax shall be paid on a "mortgage, trust deed, or security agreement at the time of recordation." (Emphasis added.) Second, unlike CSI, the taxpayer in Lincoln Pointe did not deny its liability for the tax altogether but challenged only the amount.
The reason for strict adherence to the rule requiring the tax to be determined solely from the face of the papers presented for recordation becomes clearer upon examination of the facts in Lincoln Pointe. In Lincoln Pointe, the taxpayer had recorded two mortgages in the amounts of $23,800,000 and $5,950,000, respectively, with each containing the qualifying language, "`or so much thereof as may be advanced, to be paid in accordance with the note.'" 544 So.2d at 292. Two promissory notes were executed simultaneously with the mortgages, but they were not attached to, nor were the terms of the notes recited in, the mortgages. This court held that the clerk correctly required documentary stamp taxes on the amount of $20,000,000, as to the first mortgage, based upon a handwritten legend thereon indicating that the sum financed under the note secured would not exceed $20,000,000. The taxpayer also paid the documentary stamp tax on the face amount of the $5,950,000 mortgage and thereafter sought a refund on the ground that the actual amount financed was limited to the total sum of $23,800,000, as provided in the two unattached promissory notes. This court, reiterating the rule that the documentary stamp tax was a tax on the document itself, which was submitted for recordation, and not upon the transaction contemplated by the document, rejected the taxpayer's argument that its liability was no greater than that stated in the two promissory notes.
The rule requiring the liability and amount of the documentary stamp tax to be determined solely from the face of the instrument is based on common sense. When mortgages and similar instruments of indebtedness, as described in section 201.08(1), are recorded, the taxes on them must be paid at such time. Consequently, a rule directing the clerk to look no farther than the evidence of the indebtedness stated on the face of the writing encourages certainty as to the application of the proper taxes to be paid and discourages the potential for fraud.
In cases such as that at bar, however, in which the taxpayer denies all liability for the payment of a tax on a document which is not required to be recorded, we see no reason why a court should be precluded from determining whether separate writings comprise a single agreement for taxation purposes. Thus, if a business entity decides that a document in its possession is not subject to the tax, it assumes the risk that an examination of its records may uncover certain papers which may be pertinent to taxability. Under such circumstances, the taxpayer lacks the same freedom of selection that it possesses when submitting an instrument for recordation, such as the taxpayer in Lincoln Pointe, which had the option of attaching the notes to the mortgages or of incorporating the terms thereof within the mortgages, thereby decreasing significantly the amount of taxes to be paid. Consequently, if a document is not presented for recordation, we are unaware of any rule preventing separate instruments from being considered part of the same contract in order to ascertain their liability for imposition of the tax, notwithstanding their failure to be attached or incorporated by reference into the terms of the other documents.
*1386 In fact, one of the cases CSI relies upon, Maas Bros. Inc. v. Dickinson, 195 So.2d 193 (Fla. 1967), supports our conclusion. There the taxpayer denied any liability to pay the tax and never presented the contract to be recorded. Although the supreme court held that the flexible charge account agreement at issue was not subject to the tax, because it was only an executory agreement for the sale of a commodity in the future and that no obligation to pay could arise until the commodity was delivered, the court nevertheless appears to have accepted the trial court's finding that the two documents before it, the agreement and the sales slip signed by the customer, were "two or more instruments [which] may be construed together and by their composite effect, create a valid contract even though each standing alone might be insufficient." Id. at 194. Thus, even though the terms of the sales slip were not specifically incorporated into those of the charge account agreement, the court did not exclude the contents of the slip on the ground that they constituted evidence extrinsic to the four corners of the agreement. Instead, the court examined the writing on the slip and determined that it added nothing of substance to a determination of the document's tax liability, observing that the slip "consisted of nothing more than an acknowledgment of delivery of goods and did not in itself contain any promise to pay." Id. at 197. As a result, the terms of the sales slip, involving an isolated purchase of a particular commodity on a given day by a customer, were not inconsistent with those contained in the agreement, which made the customer's promise to pay contingent upon a condition which could only arise in the future and, therefore, did not express an unconditional promise to pay, which was essential for a determination of the document's tax liability.
Unlike the provisions of the sales slip in Maas Brothers, which referenced only the purchase of a particular article on a specific date, those of the Certificate of Acceptance confirmed and completed the promise to pay provisions of the Master Lease Agreement by establishing the lease commencement date, describing the equipment leased, and identifying the total monthly lease amounts, thereby finalizing the lessee's obligation to pay.
As previously observed, the documents which comprise the record before us were uncovered during an audit of the taxpayer's records. We therefore cannot agree with CSI's argument that a court is restricted to an examination of only the four corners of those documents which CSI considers pertinent to the question of its liability for payment of the documentary stamp tax  the Master Lease Agreement and the Equipment Schedule. Although the Certificate of Acceptance was neither attached to the other instruments nor were its terms incorporated therein, it nonetheless formed an integral part of the contract, thereby making the document subject to the imposition of the documentary stamp tax.
The motions for rehearing, rehearing en banc and for certification are denied.
AFFIRMED.
WOLF and LAWRENCE, JJ., concur.
NOTES
[1] None of the form documents contained in the record, other than the Certificate of Acceptance, discloses the above information. Appellant represents in its statement of facts in its brief, however, that this occurred, and appellee has accepted these factual representations.
[2] Paragraph 2.1 of the Master Lease Agreement provides:

The commencement date ... for each Unit of Equipment will be the date on which such Unit is installed by the manufacturer or other installer, except that, in the event there is a delay in the installation of a Unit and such delay is attributable to Lessee, then the Commencement Date of such Unit shall be five (5) working days following the date upon which Lessee has been given notice that such Unit is available for installation. On the Commencement Date, Lessee shall execute and deliver to Lessor a certificate confirming the Commencement Date.
[3] Appellant states at page 12 of its initial brief the following:

The promise to pay contained in CSI's lease was similarly contingent upon CSI's performance. CSI had to arrange for installation of conforming equipment before both the term of the lease began and the lessee's payment obligation arose. Paragraph 3 of the Master Lease Agreement stated very clearly that the monthly rental would begin on the "Commencement Date" of the unit being leased, ... which was defined as the date on which the unit was installed by the manufacturer or other installer. Under Paragraph 2.2, the initial term of a lease also began on the Commencement Date... .
Thus, `if and when' the equipment was installed, .. . the term of the lease would begin and payment would be due from the lessee. Unless and until that contingency occurred, no payment obligation existed. Under these conditions, the lease did not establish a fixed and absolute obligation to pay at the moment of execution and cannot be subject to tax.