# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-3990

_____

APEX ROOFING AND
RESTORATION LLC a/a/o MONICA
WILLIAMS,

     Appellant,

     v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION,

     Appellee.

_____

On appeal from the County Court for Escambia County.
Kerra Smith, Judge.

October 2, 2024

B.L. THOMAS, J.

Apex Roofing appeals an order granting a motion to dismiss filed by Appellee United Services Automobile Association (USAA). We reverse and remand.

According to Apex's complaint, on or about February 5, 2020, the property owned by USAA's insured, Monica Williams, sustained physical damage. Williams filed a claim with USAA. She then contracted with Apex to provide services to restore the property to its pre-loss condition, and in exchange for such services, she assigned to Apex any and all rights available under

the USAA policy relating to the services rendered by Apex. The Assignment of Benefits (AOB) was signed by both Williams and the "Apex Roofing Representative" on July 20, 2020. Apex also prepared an itemized cost estimate dated July 21, 2020. After receiving notice of the loss at issue, USAA determined that coverage applied for the roof replacement services and tendered payment for the damages naming Apex as a payee.

Apex subsequently filed, as Williams's assignee, a Civil Remedy Notice of Insurer Violation (CRN) against USAA on May 26, 2021. In the CRN, Apex alleged a violation of the loss-settlement provision of the insurance policy, claimed that USAA was not treating the insured with good faith, and to cure the violation, demanded payment of $45,363.67, statutory interest, and payment of attorney's fees and costs. Subsequently, Apex demanded appraisal pursuant to the appraisal clause of the USAA insurance policy and the parties participated in the appraisal process. Within sixty days of receipt of the Appraisal Award, USAA issued payment.

Then, Apex, again as Williams's assignee, filed a complaint against USAA alleging statutory bad faith arising from the property damage claim. The complaint included a copy of the AOB. Apex alleged that USAA failed to cure the violations alleged in the CRN within the statutory-cure period. Apex argued that USAA violated sections 624.155 and 626.9541, Florida Statutes, by failing to settle the claim and underpaying the claim.

USAA moved to dismiss the complaint, arguing that Apex failed to comply with conditions precedent and failed to state a cause of action. Among other things, USAA argued that the amended complaint should be dismissed for failing to comply with section 627.7152(2)(a)4., Florida Statutes (2020), which at the time stated that an assignment agreement must "[c]ontain a written, itemized, per-unit cost estimate of the services to be performed by the assignee."* USAA argued that, because the unexecuted estimate attached to the AOB was not dated until the day after the

_____

* Section 627.7152(2)(a), Florida Statutes (2020), was amended in 2022, with section 627.7152(2)(a)4. renumbered as section 627.7152(2)(a)5.

2

AOB was signed, the AOB did not "[c]ontain" the estimate as required by statute when the AOB was signed by Williams. USAA relied on *Kidwell Group v. United Prop. & Cas. Ins. Co.*, 343 So. 3d 97 (Fla. 4th DCA 2022), which held that the plain language of section 627.7152 requires that at the time the assignment of benefits is signed, the assignor must be provided with a list of the itemized services to be performed by the assignee, as well as the costs thereof—although section 627.7152 does not explicitly require a simultaneous estimate to be included with the assignment. USAA thus argued that the AOB was invalid and unenforceable, and that therefore Apex had no standing to bring the action against USAA.

Apex filed a response to the motion to dismiss. First, Apex argued that USAA lacked standing to challenge the statutory validity of the AOB because the AOB was executed between the insured, Williams, and Apex. USAA was not a party to the assignment, and thus, Apex argued, could not raise defenses of voidability by the assignor. Second, Apex argued that it had in fact satisfied the requirements of section 627.7152 because the AOB, including the per-unit cost estimate of services, was timely sent to the insurer, USAA, within three business days, and because, when two documents concerning the same transaction are executed by the same parties at or near the same time, they are properly construed together as part of the same contract. *See, e.g., J.M. Montgomery Roofing Co. v. Fred Howland, Inc.*, 98 So. 2d 484, 486 (Fla. 1957) (explaining that multiple instruments entered into on different days but concerning the same subject matter may, depending upon the circumstances, be regarded as one contract). Third, Apex argued that based on USAA's actions, it had waived any right to challenge the validity of the AOB and should be estopped from doing so. USAA did not contest the validity of the AOB at the time it had received it. Instead, USAA treated Apex as a valid assignee by choosing not to respond to the AOB until Apex filed the lawsuit.

Apex then filed an amended complaint, making the same allegations as in the original complaint but also attaching a copy of the subject policy and the CRN in addition to the AOB. The amended complaint also alleged that USAA had acknowledged the validity of the AOB prior to suit through its actions in making

payments for the covered repairs with Apex as payee and that Apex relied on those representations.

USAA filed a motion to dismiss the amended complaint, making essentially the same arguments as in its prior motion to dismiss. At the hearing on the motion to dismiss, Apex made an additional argument that because section 624.155(1) allows "[a]ny person" to bring an action against an insurer "when such person is damaged," rather than requiring that an action be brought by a valid assignee, the question of whether the AOB met the requirements of section 627.7152 was irrelevant.

The trial court granted USAA's motion to dismiss. Relying on *Kidwell*, 343 So. 3d at 98, the trial court agreed with USAA that the AOB did not contain a written, itemized, per-unit cost estimate of services to be performed by the assignee as required by section 627.7152(2)(a)4., Florida Statutes (2020). The trial court specifically found that the attachment of a subsequently created document to the AOB was contrary to the plain language of the statute and that the statute was intended to ensure that the insured/assignor was informed as to the services to be performed and costs at the time of executing the assignment agreement. The trial court rejected Apex's argument that the validity of the AOB was irrelevant, because section 624.155(1) provides that "[a]ny person may bring a civil action against an insurer when such person is damaged." The court noted that Apex's amended complaint specified that Apex brought the action as Williams's purported assignee and pursuant to the AOB. The trial court also rejected Apex's argument that USAA lacked standing to challenge the validity of the AOB as a non-party to the AOB. The court stated that section 627.7152, Florida Statutes, specifies that a noncomplying AOB is unenforceable, and reasoned that an agreement that violates a statute is illegal and void. The trial court declined to address the other issues raised by Apex.

In considering a motion to dismiss, a trial court must construe all allegations in the complaint as true. *The Florida Bar v. Greene*, 926 So. 2d 1195, 1199 (Fla. 2006) ("A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues, and the allegations of the complaint must be taken as true and all reasonable inferences therefrom construed in favor

4

of the nonmoving party."); *Reinhard v. Bliss*, 85 So. 2d 131, 133 (Fla. 1956) ("In passing on such motion made by defendant all well pleaded material allegations of the complaint and all fair inferences to be drawn therefrom must be taken as true and the inquiry is whether the plaintiff has stated a cause of action by his complaint."). Here, Apex asserted that USAA engaged in bad faith, as defined and provided in section 624.155(1)(b), Florida Statutes (2020).

The amended complaint asserts that USAA waived, or was estopped, from asserting its defense of invalidity of the AOB, based on its conduct in providing coverage, engaging in appraisal, and failing to inform Apex or the insured that it believed the AOB was invalid until after Apex had filed suit. Such allegations, if true, cannot be rejected as a matter of law where asserted facts are not resolved, either by summary judgment or trial. We understand the trial court was bound by a decision from another district court for this rationale. *See Kidwell*, 343 So. 3d at 98. But that decision is not binding on this Court. And without deciding whether the Fourth District reached the correct result under the statute's actual text—which does not appear to support that decision's rationale—we reach a different conclusion, where the alleged facts here cannot be determined on a motion to dismiss.

We reverse and remand for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

BILBREY, J., concurs; TANENBAUM, J., concurs with opinion.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

TANENBAUM, J., concurring.

In the *Kidwell Group* decision discussed in Judge Thomas's opinion for the court—an opinion I join—the Fourth District

(ironically) considers the "plain language" of section 627.7152(2)(a), Florida Statutes, to "require[] that *at the time the assignment of benefits is signed*, the assignor must be provided with a list of the itemized services to be performed by the assignee, as well as the costs thereof." *Kidwell Grp., LLC v. United Prop. & Cas. Ins. Co.*, 343 So. 3d 97, 97 (Fla. 4th DCA 2022) (emphasis supplied). I say "ironically" because rummage as one might through the text of that statute, there will be no finding a "same-time" requirement.

The statute instead lists several elements an "assignment agreement" must contain to be valid and enforceable. *See* § 627.7152(2)(d), Fla. Stat. (2020). Among other things, the agreement must "[b]e in writing and executed by and between the assignor and the assignee"; "[c]ontain a written, itemized, per-unit cost estimate of the services to be performed by the assignee"; and "[r]elate only to work to be performed by the assignee for services to protect, repair, restore, or replace a dwelling or structure or to mitigate against further damage to such property." *Id.* (2)(a)1., 4., 5. It does not specify in what manner the parties form the agreement, there being no "plain language" that requires the parties be in the same room when the agreement is executed or the agreement to be made up of a single writing, all put together at the same time.

Indeed, contracts in Florida do not need to be contained in one document, executed all at once, to be considered a binding agreement. *See J.M. Montgomery Roofing Co. v. Fred Howland, Inc.*, 98 So. 2d 484, 486 (Fla. 1957) (observing "the rule that where an agreement is evidenced by two or more writings, the writing must be construed together, . . . is not necessarily confined to instruments executed at the same time by the same parties for the same purpose; *instruments entered into on different days, but concerning the same subject matter,* may under some circumstances be regarded as *one contract* and interpreted together" (emphases supplied) (internal quotation omitted)); *see also Gardenia Ests. v. Grove Land & Timber Co.*, 140 So. 787, 789 (Fla. 1932) (analyzing "corelated parts of one and the same general transaction" to discern the intent of the parties); *Jackson v. Parker*, 15 So. 2d 451, 459–61 (Fla. 1943) (same); *Cushman v. Smith*, 528 So. 2d 962, 964 (Fla. 1st DCA 1988) ("However, the rule is that

where an agreement is evidenced by two or more writings, the writings must be construed together. This rule is not necessarily confined to instruments executed at the same time *by the same parties* for the same purpose; instruments entered into *on different days but concerning the same subject matter* may under some circumstances be regarded as one contract and interpreted together." (second emphasis supplied)); *Comput. Sales Intern., Inc. v. State, Dep't of Rev.*, 656 So. 2d 1382, 1384 (Fla. 1st DCA 1995) ("[T]he rule requiring that writings which evidence a single agreement must be construed together is *not necessarily confined to instruments executed at the same time by the same parties for the same purpose.* Rather, instruments entered into [sic] *on different days* but containing the same subject matter may, under appropriate circumstances, be regarded as one contract and interpreted together." (emphases supplied)).

The amended complaint in the underlying suit alleges that Apex Roofing entered into an assignment agreement with one of USAA's insureds. Apex Roofing allegedly agreed to provide repair services to that insured to restore her roof, which had sustained significant hail damage. In return, the insured agreed to assign to Apex Roofing "any and all rights available under" her insurance policy relating to the repair services that were to have been provided. Attached to the amended complaint as an exhibit is what purports to be that agreement. The exhibit includes two documents: the assignment agreement, signed and dated July 20, 2020, by the insured and a representative of Apex Roofing; and a detailed cost sheet addressed to the insured and dated the next day. Notably, the latter document contains a "file number" that is identical to the "claim number" listed on the assignment agreement, and it is addressed to the insured as listed in the agreement. *Cf. OBS Co., Inc. v. Pace Const. Corp.*, 558 So. 2d 404, 406 (Fla. 1990) ("It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing."); *Comput. Sales*, 656 So. 2d at 1384 ("The rule is clear that when a writing expressly refers to and sufficiently describes another document— in this case, the Certificate of Acceptance—the other document is to be interpreted as part of the writing.").

7

For USAA to prove up its contention that the assignment agreement is invalid and unenforceable under the statute, it must establish—through evidence—that these documents are not two parts of one agreement. How the parties intended for those documents to operate together and govern their agreement for repair services to be provided is a question of fact, one that cannot be resolved on a motion to dismiss. *See Jackson*, 15 So. 2d at 459 ("[T]he primary purpose of [contract] construction is to ascertain the intention of the parties. This is done not only from the face of the instrument, but also from the situation of the parties and the nature and object of their transactions." (internal quotations omitted)); *see also J.M. Montgomery Roofing Co.*, 98 So. 2d at 486; *see also Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001) ("Where the terms of the written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties' intent which cannot properly be resolved by summary judgment." (internal quotation and citation omitted)).

The trial court made assumptions of fact that it could not make when it dismissed the amended complaint. We correctly reverse.

_____

Margaret E. Garner and Sameer Mohammad of Katranis, Wald & Garner, PLLC, Fort Lauderdale, for Appellant.

Kansas R. Gooden of Boyd & Jenerette, PA, Miami; Lara J. Edelstein of Boyd & Jenerette, PA, Boca Raton, for Appellee.